In the Matter of MANSFIELD TIRE & RUBBER COMPANY, Pennsylvania Tire and Rubber Company of Mississippi, Inc. and Pennsylvania Tire Company, Debtors.

Bankruptcy No. 679–01238.

United States Bankruptcy Court, N.D. Ohio.

Sept. 1, 1988.

See also 85 B.R. 437.

James DeWeese, Asst. City Prosecutor, Richland County, Ohio, for Richland County Treasurer.

Jeffrey Schwartzberg, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, David L. Simiele of Krugliak, Wilkens, Griffiths & Dougherty, Canton, Ohio, for co-trustees.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Before the court for consideration is the request of the Richland County Treasurer (Treasurer) for the payment, as an administrative expense, of real property taxes, penalties and interest incurred by Mansfield & Rubber Company (MTR) after it filed for relief under Chapter 11 of Title 11 of the United States Code.

The court has made three previous rulings (March 26, 1987, December 7, 1987, 85 BR 437, and May 12, 1988) on the Treasurer's request and comes, finally, to the sole remaining issue between the parties which is the determination of the amount, if any, the Treasurer may recover on his request.

## FACTS

In that the facts have been fully set forth in the court's prior Memoranda issued in conjunction with the rulings noted above, only the relevant facts relating to the final issue before the court need be recited here.

MTR filed for relief under Chapter 11 of Title 11 of the United States Code on October 1, 1979. MTR continued in the operational management of its business and property as debtor in possession pursuant to Bankruptcy Code Sections 1107 and 1108 until August 11, 1981 when Samuel Krugliak was appointed Trustee under the authority contained in Section 1104. On December 30, 1985, a consolidated liquidating plan of reorganization for MTR and its affiliate debtor corporations, Pennsylvania Tire and Rubber Company of Mississippi, Inc. and Pennsylvania Tire Company, was confirmed, under which Samuel Krugliak and Richard L. Phillips were appointed Co–Disposition Assets Trustees (Co–Trustees).

The Treasurer, on April 6, 1984, filed a proof of claim in the amount of $304,411.63 for delinquent real property taxes. The document claimed priority status. On August 12, 1986, the Treasurer filed a request for payment of the real property taxes and interest as an administrative expense. The Co–Trustees responded, objecting to the April 6, 1984 proof of claim and the August 12, 1986 request for payment of an administrative expense and moved for summary judgment. The court's March 26, 1987 order disallowed the April 6, 1984 proof of claim as a proof of claim, but found that the document constituted a request for payment of an administrative expense under 11 U.S.C. § 503. The court also concluded that the interest accrued on these post-petition taxes was not an allowable administrative expense under Section 503(b)(1)(C).

The court next considered cross motions for partial summary judgment on the issue of whether post-petition real estate taxes constitute an administrative expense. By the order entered December 7, 1987, the court resolved the issue in the affirmative. In its accompanying Memorandum it pointed out that post-petition real estate taxes are obligations incurred by the bankruptcy estate and that these real estate taxes are "properly expenses of administration within the meaning of Section 503(b)(1)(B). Therefore, these taxes are entitled to administrative priority under the distribution plan of Section 507(a)(1)." (Memorandum of Decision p. 16).

The court further found that the amount of the administrative expense claim the Treasurer has for post-petition real estate taxes is limited to the value of the specific real property involved. Finally, the court determined that "[a]s for the value of the specific real property, there is no better measure of its worth than the amount received upon its disposition." (Memorandum of Decision p. 18).

On May 12, 1988, the court supplemented its December 7, 1987 order by finding that:

> For purposes of determining the value which limits the taxes and penalties the treasurer may collect as to a parcel of real property, the sale proceeds obtained by the debtor from sale of that parcel shall be binding as to the value of that parcel regardless of whether the debtor sought or obtained bankruptcy court approval for that sale.

> In making the comparison of the value of a parcel of real property to the taxes and penalties which have accrued on that parcel, the comparison is to be made on the basis of the parcel as sold by the debtor and not on the basis of each permanent tax parcel as carried by the treasurer.

The Treasurer's review and analysis of the court's prior Memoranda and his own records leads to his assertion that there is due and payable $190,025.53 as an administrative expense for post-petition real estate taxes and penalties on the following parcels of real estate:

1. The remaining unsold portion of permanent parcel No. 027–05–098–05–000 which the Co–Trustees propose to sell to David and Marilyn Eckstein. (Eckstein Property)

2. The remaining unsold lots and ballfield which are permanent parcels No. 027–05–098–14–000, 027–05–098–15–000, 027–05–098–16–000, 027–05–099–03–000, 027–05–099–04–000, 027–05–099–05–000 and 027–05–099–06–000. (Unsold Property)

3. The property transferred by MTR to Trustcorp in return for release of the claims of the MTR Industrial Revenue Bondholders, which are permanent parcels No. 027–05–009–02–000, 027–05–099–07–000, 027–05–099–08–000 and part of permanent parcel No. 027–05–098–05–000. (Trustcorp Property)

4. The property sold to Grant Milliron during 1986, which includes part of permanent parcel No. 027–05–098–05–000. (Milliron Property)

The Co–Trustees assert that no taxes are owed on the Trustcorp Property and Milliron Property, and that no taxes are owed at this time on the Eckstein Property and Unsold Property.

## DISCUSSION

### A

### ECKSTEIN PROPERTY

The Co–Trustees intend to sell the Eckstein Property to David and Marilyn Eckstein for $22,000.00. However, the proposed sale has not yet closed and the Co–Trustees have not been paid the sale price. The current real estate taxes and penalties for this property exceed $30,000.00. The Treasurer asserts that since the taxes exceed the sale price, he is entitled to recover as an administrative expense $22,000.00 and requests immediate payment.

The Co–Trustees, relying on Ohio law, assert that the Treasurer will, at some future time, be entitled to payment but not until a final sale. The Co–Trustees argue that if the Treasurer desires payment now, he can seek relief from the automatic stay,

*See,* 11 U.S.C. § 362, and proceed with a state court foreclosure action. The Co-Trustees maintain that "the Treasurer must be limited to his collection rights given under Ohio law, with the right to recover real estate taxes and penalties up to the value of the parcels as 'determined upon their sale'". (Co-Trustees' Supplemental Memorandum p. 2; citing court's December 7, 1987 Memorandum of Decision p. 18).

The court finds, however, that the Co-Trustees are inaccurately interpreting this court's prior decision. The court, in its earlier ruling, held, as noted, that post-petition real estate taxes are entitled to administrative expense priority, which expense may not exceed the value of the property under consideration. That value is best measured by the sale price. (Memorandum of Decision, p. 18.) That conclusion is not tantamount, as the Co-Trustees contend, to a ruling that the administrative expense for which the estate is liable must perforce await actual sale. It is, rather, a suggestion of the ultimate means of valuation. In the case of the Eckstein Property, the Co-Trustees have obviously concluded that $22,000 is a fair value, and they have agreed to sell the tract for that amount. Having so determined, this value is binding on the parties. *See* Supplemental Order, quoted *supra* at 3–4.

To adopt the Co-Trustees argument would, in effect, negate this court's prior ruling that post-petition real estate taxes are an administrative expense entitled to first priority treatment. Further, the court finds no reason why the Co-Trustees should delay paying these real estate taxes when they have acknowledged that the Treasurer is entitled to payment.

## B

### UNSOLD PROPERTY

■ There is currently due and owing on the Unsold Property $5,267.14 in post-petition real estate taxes and penalties. The parties have stipulated:

... [t]he current market values as of June 8, 1988 of tax parcel numbers 027–05–098–14–000, 027–05–098–15–000, 027–05–098–16–000, 027–05–099–03–000, 027–05–099–04–000, 027–05–099–05–000 and 027–05–099–06–000 are at least equal to the total the taxes and penalties shown for each of those parcels on Schedule A ... (Stipulations of Fact No. 8)

The Co-Trustees raise the same arguments as were asserted in regard to the Eckstein Property. In that the parties have stipulated to the value of the specific property and based upon this court's prior findings, *supra* at 5–6, the court finds that the Treasurer is entitled to immediate payment of the real estate taxes and penalties as they relate to the Unsold Property.

## C

### TRUSTCORP PROPERTY

■ Pursuant to this court's order of October 30, 1985, the Trustcorp Property was transferred to First Buckeye Bank N.A., as trustee for the Industrial Revenue Bondholders, free and clear of all claims and liens. In consideration for the transfer, the bondholders released their claims against the estate totaling $836,815.00 plus interest. The property was subsequently sold for $330,000.00.

After the payment of $7,131.49 in real estate taxes and penalties allocable to the last five months of calendar year 1985, there was due and owing as of the date of the transfer $137,863.27 (Stipulations of Fact No. 4).[1] The Treasurer asserts that he is entitled to payment in full based upon the fact that both the value of the claims released and the amount for which the property was subsequently sold exceed the amount of taxes due.

The Co-Trustees mount an interesting attack upon the Treasurer's claim for taxes and penalties attributable to these parcels. First, they maintain that under Ohio law, "no personal liability attaches for real estate tax obligations," (Co-Trustees' Memorandum, part IV). The Treasurer well

---

**1.** A slightly higher figure, $138,294.62, appears in the Treasurer's June 8, 1988 Trial Memorandum. The Co-Trustees use $138,113.40. The court will rely upon the stipulated number.

characterizes their approach as an attempt to side-step the earlier ruling of the court that the claim under consideration is one for administrative expenses entitled to treatment pursuant to 11 U.S.C. § 503(b)(1)(B). (Memorandum of Decision and Order entered December 7, 1987). It is as if, the Treasurer correctly notes, the court had earlier agreed with the Co–Trustees' position on that point. It clearly did not and the issue is not whether the estate is liable for the sums claimed by the Treasurer, but only the extent of that liability. *That* determination, the court held, is governed by the value of the real estate, recognizing that such value "caps" the tax exposure of the estate.

That exposure is zero, next say the Co–Trustees, because no money came into the estate as a result of the release of the bondholders' claims. Indeed, the world of reorganization would be a better place for debtors, and correspondingly more inhospitable for taxing authorities, were the Co–Trustees correct. One simply cannot escape taxation, it hardly seems necessary to point out, by merely exchanging property for debt release. The Internal Revenue Code and the regulations promulgated thereunder anticipate such a ploy. Treasury Reg. S1.1001–2(a) provides that from the disposition of property, the amount realized "includes the amount of liabilities from which the transferor is discharged as a result of the sale or disposition."

The Bankruptcy Code itself, in dealing with trustees' compensation (and hence, incidentally, increasing the administrative expenses of the estate) allows, in Section 326(a) for commissions on "moneys disbursed or turned over in the case by the trustee to ... holders of secured claims." Hence a trustee's compensation will take into account not just the cash flowing into his or her hands but the value of any mortgages and other liens, including taxes, satisfied from the sale proceeds.

What *is* the value of the release of the bondholders' claim of $836,815.00, plus interest?

That, after all, is the benefit accruing to the estate from the transaction and which will, when assessed in monetary terms, determine the limit of the estate's tax exposure. At the very least, the estate appears to have been relieved of a secured claim worth $330,000.00, the price secured by the transferee in a virtually contemporaneous sale of the property.[2] So viewed, the value of lands involved in the transfer exceeds the tax obligation thereon and the Treasurer is entitled to payment, forthwith, as an administrative expense, of the stipulated $137,863.17.

## D

### MILLIRON PROPERTY

■ The *Milliron Property* was sold to Grant Milliron on October 17, 1986 for $75,-000.00. At the time of the purchase, $37,-489.07 was paid toward the real property taxes, interest and penalties. This amount was based upon a figure given by an employee of the Richland County Auditor.

The Treasurer asserts that the amount paid was incorrect and that there is remaining due $24,463.77 in taxes and penalties. The Treasurer argues that he is not bound by information given by a county employee and that the Treasurer can only accept full payment. Therefore, he maintains, he is entitled to immediate payment of the amount remaining due.

The Co–Trustees argue that the Treasurer, by accepting the $37,489.07, has accepted payment in full and no further claim exists. Secondly, the Co–Trustees assert that the Treasurer has not presented admissible evidence to establish the exact amount of taxes and penalties still owing as allocated to this property.

As to whether the Treasurer has a claim for unpaid taxes, the court is unpersuaded by the Co–Trustees' argument. The Co–Trustees, relying on Ohio Rev.Code § 323.15,[3] argue that the $37,489.07 paid

**2.** The parties do not address the circumstances of the subsequent sale. Presumably, it was an

arms' length transaction in which fair market value was paid.

**3.** Except as otherwise provided by Section 323.-

must have been payment in full because the Treasurer accepted the payment. The court, however, does not so interpret this section. Ohio Rev.Code § 323.15 merely states that "no person shall be permitted to pay less than the full amount of taxes...." The court does not find in this section any language that could be construed to mean that whatever amount a taxpayer tenders as payment for real estate taxes, and which is accepted by the Treasurer, constitutes payment in full. To the contrary, the language of Ohio Rev.Code § 323.15 provides that a taxpayer must pay all taxes in full and the Treasurer is without the authority to abate them.

Additionally, the Co–Trustees were, or should have been, aware that the taxes paid may not have been the full amount due in that the purchase agreement with Grant Milliron expressly stated that the amount due for real estate taxes was an estimate. *See*, Affidavit of Samuel Krugliak, appendix CC, May 22, 1987.

The court further finds that the Treasurer is not bound by the statements of an employee of the county auditor. The amount of taxes due on real property is ascertainable from various public sources and to bind the Treasurer to statements made by an employee not even under his control would unfairly constrain the taxing ability of county government.

 As to the amount of the Treasurer's claim for unpaid taxes on the Milliron Property, the Treasurer, through the affidavit of Terry Hott, deputy county auditor, asserts that there is due $24,463.77. Absent the affidavit, there is nothing before the court from which to determine the amount of taxes due.

The Co–Trustees object to the affidavit of Terry Hott asserting that the parties agreed that this matter would be submitted to the court upon agreed stipulations of fact and briefs and they had no opportunity to cross examine Mr. Hott.

The court agrees with the Co–Trustees. The parties have filed with the court stipulations of fact in which there is no reference to the amount of taxes due on the Milliron Property. Were the court to accept Mr. Hott's affidavit under these circumstances, wherein the parties agreed to proceed without a hearing, prejudice would result to the Co–Trustees based on the fact that the Co–Trustees have not had an opportunity to challenge the amount asserted in the affidavit or present their own evidence as to the amount due. Accordingly, the affidavit of Terry Hott will be disregarded and stricken.

The striking of Terry Hott's affidavit, however, does not eliminate the Co–Trustees' liability to pay the taxes owing on the Milliron Property. The striking of the affidavit, without other evidence before the court, merely leaves open the question of the amount due the Treasurer. The court is confident that the parties, with the information available to them, will be able to ascertain the amount due based upon this and prior Memoranda of Decision.

An order in accordance herewith shall issue.

---

132 [323.13.2] and 323.31 of the Revised Code, no person shall be permitted to pay less than the full amount of taxes charged and payable for all purposes on real estate at the times provided by

Section 323.12 and 323.17 of the Revised Code except when the collection of a particular tax is legally enjoined....