JOHN P. HIGGINS, APPELLEE, v. KENT K. HAYDEN,
RECEIVER, APPELLANT.

FILED DECEMBER 9, 1897.   No. 7622.

1. **Banks and Banking**: BILL OF EXCHANGE: COLLECTION: TITLE.  Evidence examined and *held* to show that a bill of exchange, drawn to the order of a bank by its customer, the amount of which was placed to the customer's credit, became the property of the bank, and was not entrusted to it merely for collection.

2. ———: INSOLVENCY: TRUSTS: PLEADING.  A petition seeking to charge a trust on property in the hands of the defendant, the receiver of an insolvent bank, may allege that the bank obtained the property as bailee, and at the same time charge that it was obtained by fraudulent concealment of insolvency, and relief may be granted on the latter ground, although the former be not proved.

3. ———: ———: FRAUD: DEPOSITS.  Where a bank remains open and holds itself out as ready to transact business, this is an implied representation of solvency, and for its officers to then receive a deposit, knowing it to be hopelessly insolvent, is a fraud.

4. ———: ———: ———: ———: RESCISSION.  The depositor under such circumstances may rescind the contract of deposit and recover back the thing deposited, while it or its proceeds may be distinguished in specie, and before they have become commingled with the general assets of the bank.

5. ———: ———: ———: ———: EVIDENCE.  Certain stipulations in the record *held* to justify a finding that the proceeds of the deposit in question had been preserved separate, and not commingled with the general assets.

APPEAL from the district court of Lancaster county.
Heard below before TIBBETS, J.  *Affirmed.*

The opinion contains a statement of the case.

*Cobb & Harvey* and *G. M. Lambertson,* for appellant:

The draft was not deposited for collection but for credit, and the only relation between the parties is that of debtor and creditor. (*National Commercial Bank v. Miller,* 77 Ala. 168; *St. Louis & S. F. R. Co. v. Johnston,* 27 Fed. Rep. 243; *Ditch v. Western Nat. Bank,* 10 Banking L. J. 354.)

The alleged insolvency of the bank affords the plaintiff no ground of action. (*Redington v. Roberts*, 25 Vt. 686; *Patton v. Campbell*, 70 Ill. 72; *Smith v. Smith*, 21 Pa. St. 367; *Nichols v. Pinner*, 18 N. Y. 295.)

The court erred in rendering judgment for interest. (*White v. Knox*, 111 U. S. 784.)

*A. G. Greenlee, contra:*

The draft remained the property of the appellee, as did also the proceeds. (*Freeholders v. State Bank*, 32 N. J. Eq. 467; *Hazlett v. Commercial Nat. Bank*, 19 Atl. Rep. [Pa.] 55; *National Gold Bank & Trust Co. v. McDonald*, 51 Cal. 64; *Scott v. Ocean Bank*, 23 N. Y. 289; *Beal v. City of Somerville*, 50 Fed. Rep. 647.)

The bank did not become the owner of the draft in controversy for the reason that it was hopelessly insolvent at the time, and was known to be so by the president who received this draft. Its receipt for any purpose was such a fraud upon the appellee as would prevent the bank from acquiring title. (*Williams v. Lowe*, 4 Neb. 394; *St. Louis & S. F. R. Co. v. Johnston*, 133 U. S. 576; *Wilson v. Coburn*, 35 Neb. 530.)

The appellee is entitled to interest from the time receiver obtained the money. (*Thompson v. Gloucester City Savings Institution*, 8 Atl. Rep. [N. J.] 97; *Moors v. Washburn*, 34 N. E. Rep. [Mass.] 182; *Judd v. Dike*, 15 N. W. Rep. [Minn.] 672.)

IRVINE, C.

The plaintiff, Higgins, was a customer and depositor of the Capital National Bank of Lincoln, and on the morning of January 19, 1893, drew a bill of exchange on George Burke & Frazier, of South Omaha, for $2,000, to the order of the bank, and tendered it to the teller, saying that he had checks outstanding which would overdraw his account and that he desired credit for the draft. The teller referred him to the president of the

bank, who at first hesitated to allow credit for the draft, but on plaintiff's informing him of the outstanding checks agreed to do so, saying: "Well, we will give you credit for it, but if Burke & Frazier don't pay it you will be overdrawn just the same. We will take care of your checks." Thereupon a deposit slip was made out, which, with the draft, was handed to the teller, who then gave plaintiff credit on his pass-book for $2,000. Plaintiff's account was that morning overdrawn $5.15. Plaintiff, on obtaining the credit, drew a check for $10, which was cashed, and during the day a check previously drawn for $1,000 was presented and paid,—all against the credit obtained by the draft. The bank was at the time irretrievably insolvent and its president knew that fact. It remained open and transacted business until the afternoon of January 21, but did not open thereafter and was soon placed in the custody of a receiver. On the 20th and 21st there were certain small deposits and checks by the plaintiff, the net effect of which was to leave the bank indebted to the plaintiff at the time of its failure in the sum of $998.20. The bank on receiving the draft had immediately sent it to the South Omaha National Bank, its correspondent. It was accepted, and on the 21st paid to the South Omaha bank, and its amount was then credited by the South Omaha bank to the Lincoln bank. On the failure of the Lincoln bank the plaintiff undertook to arrest the proceeds of the draft, to the extent of the Lincoln bank's debt to him, in the hands of the South Omaha bank. This sum was held by the South Omaha bank for some months and was finally paid to the receiver under some arrangement whereby it was to be held by him to await the result of this case, which was then begun by the plaintiff against the receiver to charge a trust upon the fund. The finding and judgment of the district court were in favor of the plaintiff and the receiver appeals.

The case was presented upon the principal theory that the draft had been entrusted to the Lincoln bank merely

for collection, and that it remained the plaintiff's property, subject only to a lien in favor of the bank for the sums advanced on the faith thereof. We think the proof failed to support this theory. The evidence shows, without contradiction, that the plaintiff had drawn checks to the amount of more than $1,000 against an already overdrawn account, and that he realized the necessity of securing a credit at the bank which would protect them. The bank received the draft with the distinct understanding that a credit was to be given which had already been drawn against, it paid outstanding checks in pursuance of that understanding and cashed a check contemporaneously with the deposit. The conduct of the parties is entirely inconsistent with the theory of a bailment for collection. It establishes as clearly as evidence could that the draft was drawn for the benefit of the bank and in consideration of an immediate credit of its face value.

The petition, however, contained averments of the bank's insolvency and of its president's knowledge thereof, and that the draft had been procured through the president's fraudulent concealment of the bank's condition, and relief was asked also on that ground. Appellant urges that the latter theory is inconsistent with that already discussed, and that the plaintiff cannot be heard to urge it in connection therewith. We do not think that the two theories are inconsistent. One may, with perfect consistency, say, "You obtained my property as bailee for a special purpose, and you shall not claim it for your own," and at the same time say, "You obtained possession of my property by fraud, and whether it was by bailment or sale I wish to rescind the contract and recover the property." The bill in the case of *St. Louis & S. F. R. Co. v. Johnston,* 133 U. S. 566, was framed in a very similar manner. The circuit court held that the two theories were inconsistent (27 Fed. Rep. 243), but the supreme court of the United States reversed the decree of the circuit court and granted relief on both grounds, holding that the pleading was regular.

Where a bank remains open, holding itself out as ready to transact business, this is an implied representation of solvency, and for it to receive a deposit when its insolvency is known to its officers is a fraud upon the depositor. (*St. Louis & S. F. R. Co. v. Johnston, supra; Cragie v. Hadley,* 99 N. Y. 131; *Anonymous,* 67 N. Y. 598; *American Trust & Savings Bank v. Gueder & Paeschke Mfg. Co.,* 150 Ill. 336; *Peck v. First Nat. Bank,* 43 Fed. Rep. 357; *Wasson v. Hawkins,* 59 Fed. Rep. 233.) The depositor may, therefore, at his election, rescind the contract of deposit and recover back the money or property, but he must do so before the deposit has become commingled with the general assets of the bank. (*Wilson v. Coburn,* 35 Neb. 530.) Had in this case such a commingling taken place?

The South Omaha bank was a regular correspondent of the Lincoln bank and did not remit collections made for it in specie or as distinct remittances. It credited the Lincoln bank with funds as they were collected, and transferred balances on orders of the Lincoln bank in round sums as they accrued and the Lincoln bank demanded. When the draft was received by the South Omaha bank the account of the Lincoln bank seems to have been overdrawn, as appears from a memorandum on the letter acknowledging the draft. On the morning of January 21, there was to the credit of the Lincoln bank $1,025.05. The $2,000 draft was paid that day and passed to its further credit, and there was an additional credit of $1,751.04, making a total credit of $4,776.09. The Lincoln bank that day drew $3,000, leaving a balance in favor of the Lincoln bank at the time of the failure, of $1,776.09. This was certainly evidence tending, at least, to show that there had been a commingling of the proceeds of the draft with the funds of the Lincoln bank, by using such proceeds at least in part for the payment of drafts of that bank. This would seem to follow from the rules laid down in a somewhat similar case by the supreme court of the United States. (*Com-*

*mercial Nat. Bank v. Armstrong,* 148 U. S. 50.) We are, however, embarrassed in the consideration of this question by certain stipulations appearing in the bill of exceptions. At the commencement of the trial it was stipulated "that the money in controversy was in the hands of the South Omaha National Bank at the time of the failure of the Capital National Bank, and the appointment of a receiver thereof, and was remitted by the said South Omaha National Bank to the receiver on or about the 19th day of July, 1893, and that the fact that the money was so transferred from the possession of the South Omaha National Bank to the possession of the receiver shall not affect or prejudice the rights of the plaintiff to the same." Giving this stipulation its reasonable effect, it would seem to recognize that the specific money collected on this draft was retained by the South Omaha bank, and that it was still retained separately by the receiver in such manner as to protect the rights of plaintiff. Nevertheless, at the close of the bill of exceptions we find counsel for the receiver making the following statement: "It is stipulated that the meaning of the words 'money in controversy' as used in the stipulation at the beginning of this case has reference to the balance due the Capital National Bank from the South Omaha National Bank at the date of its remittance to the receiver of the Capital National Bank. The defendant does not admit, however, that said sum is a part of the money collected, but claims and reserves the right to show by competent testimony that it was mingled with other funds of the Capital National Bank prior to the date of its remittance to the receiver." This was followed by a statement by counsel for the plaintiff, after a formal objection to the introduction of a statement of the account between the two banks which was of no consequence on this issue because it disclosed no dates of payments, that "the reservation of the defendant in the stipulation having been made after the case was tried and argued, the plaintiff will ask leave, if he

so desires, to introduce testimony upon the matters set forth in the reservation." It will be observed that the modification of the stipulation had in view, not the substitution of other facts by agreement for those stipulated, but that it seemed to contemplate merely the withdrawal of any estoppel from proving the facts in this very vital respect to be contrary to those stipulated, that plaintiff did not resist the modification so claimed, but merely claimed the right to himself introduce evidence on the issue so injected. So far as appears from the record neither side availed itself of the privilege of offering further proof, and a reasonable construction of the record is that the stipulation was to stand, except as the defendant by further proof, which it does not appear he adduced, should rebut one feature thereof. In this light it was proper for the district court to consider the stipulation as of full effect in establishing that the fund had been preserved separate by the collecting agent, and that it had gone to the receiver under an agreement to continue its separate custody.

Finally it is contended that the district court erred in allowing interest under the circumstances. In the absence of statute this contention would have much force, but the point has heretofore been determined adversely to the defendant upon a construction of our statute. (Compiled Statutes, ch. 44, sec. 4; *Capital Nat. Bank v. Coldwater Nat. Bank*, 49 Neb. 786.)

AFFIRMED.