STATE OF NEBRASKA, APPELLEE, V. GERMAN SAVINGS BANK
OF OMAHA ET AL., APPELLEES, IMPLEADED WITH M.
WOLLSTEIN & CO. ET AL., APPELLANTS.

FILED JULY 1, 1902.　NO. 12,484.

Commissioner's opinion, Department No. 2.

1. **Evidence:** JUDICIAL DISCRETION: APPROVING COMPROMISE. Evidence
examined, and *held* not to show any abuse of discretion of
the trial court in approving a compromise of doubtful claims
with stockholders of defendant.

2. **Receiver of Insolvent Bank:** COMPOUNDING DOUBTFUL DEBTS. The
power conferred on the receiver of an insolvent bank by sec-
tion 35, chapter 8, Compiled Statutes, to "compound all bad
or doubtful debts when approved by the court or judge,"
includes the right to compromise doubtful claims against
stockholders of such bank for the double liability imposed
upon them by the constitution of this state in section 7,
article 11b.

APPEAL from the district court for Douglas county.
Heard below before FAWCETT, J. *Affirmed.*

*Brome & Burnett, Virgil O. Strickler* and *James H.
McIntosh,* for appellants.

*Ralph W. Breckenridge* and *Joel W. West, contra.*

OLDHAM, C.

This is the ninth time that the reviewing jurisdiction
of this court has been appealed to, either for relief from
some order, judgment or finding of the district court for
Douglas county, in closing up the affairs of the defendant,
German Savings Bank, or for mandates to compel the
judge to settle bills of exceptions, or to approve bonds in
this matter. On the 23d day of July, 1896, Thomas H. Mc-
Cague was duly appointed receiver of the defendant, the
German Savings Bank, and after much litigation and
many vexatious delays, he had succeeded in the early part
of 1901 in disposing of the assets of the bank. From the

proceeds of the sale of these assets a dividend of 33 1-3 per
cent. was paid to the depositors, and on the 6th day of May,
1901, the court found that all the assets of the bank had
been exhausted, and that there had been about $300,000
due depositors when the bank failed, and that after apply-
ing the proceeds of the sale of all the assets, there still re-
mained due the depositors about $200,000. The court fur-
ther found that there had been subscribed and issued of
the capital stock of the German Savings Bank $500,000,
divided into 5,000 shares of the par value of $100 each.
It also found that there was no way left to pay all the
debts, except by collecting the liability due from the stock-
holders, and ordered the receiver to bring suit against the
stockholders for their unpaid subscription of stock, as well
as for their double liability. Concerning these orders and
findings of the district court there is no complaint.
Shortly after suit had been ordered to be instituted by
the receiver against the stockholders, a proposition of
compromise was made by certain stockholders to the re-
ceiver in which they proposed to pay, in round numbers,
the sum of $103,000 in settlement of their liabilities as
stockholders. The report of the receiver on this proposi-
tion is duly verified, and his recommendation was as fol-
lows: "Your receiver reports that a careful investigation
of the financial condition of the several stockholders in
the German Savings Bank discloses the following facts:
A considerable number of the stockholders of the bank
have died. Many others have moved beyond the jurisdic-
tion of the court. Others are insolvent. Others are not
financially responsible to the extent of their several liabil-
ities. Others deny their liabilities upon various grounds
and while a considerable proportion of the stockholders
of the bank are solvent, yet your receiver believes that it
will be for the interest of the estate of the German Savings
Bank to accept the offers herein reported as a compromise
of the liabilities of the said stockholders whose names are
herein reported to the depositors of the bank. Wherefore
your receiver asks the instructions of the court in the

34

premises." This report was filed on the 5th day of July, 1901, and on the 8th day of July, 1901, after notice had been duly served upon and accepted by the bank, the court, after hearing the testimony as to the advisability of the settlement, accepted the report and directed a settlement as therein offered. Grant S. Cobb and others, the appellants in this cause, representing about one-fourth of the creditors, attempted to intervene on the 9th day of July, 1901, for the purpose of resisting the order; and subsequently, on the 13th day of July, 1901, eight of the appellants filed a motion to modify and set aside the order of the court of July 8th approving this report. The term of court adjourned on the 20th day of July, 1901, without action on these motions and objections. On the 10th day of September a "supplemental motion to vacate the order entered herein July 8th, 1901," was filed by appellants. On the 2d day of October, 1901, the receiver filed a special and supplemental report containing the offer of nineteen other stockholders to pay certain sums therein named in compromise of their liability. The appellants filed an answer to this special report on the 7th day of October, 1901, objecting to its acceptance. On the 18th day of November after a hearing of all the motions and objections filed by the appellants to the receiver's report approved July 8, 1901, and the supplemental report filed October 2, 1901, the court overruled all objections and confirmed both reports, and from this judgment, the creditors have appealed.

There is nothing in the record in this proceeding which shows that the trial judge was guilty of any abuse of the discretion reposed in him in directing the acceptance of this compromise. There is much evidence in the record tending to support the statements contained in the report of the receiver, before set out, with reference to the probability of the collection of these claims from the different stockholders. It is urged by the appellants, however, that the court was without power and authority to direct the acceptance of this compromise, because it had no juris-

diction over the different stockholders to enforce their compliance with the agreement when it was accepted, and because the receiver had no authority to compromise the liability of the stockholders created by the constitution of this state in section 7, article 11b.

If the first objection had been followed by a showing that the stockholders had refused to comply with the terms of the agreement, it would have been worthy of serious attention; but the record shows that after the approval of the settlement the various stockholders did comply with the order of the court and paid the various sums which they had offered in compromise of their liability to the receiver, and that all the creditors, except the appellants, who refused to do so, have received about 50 per cent. of the remainder of their claims from the proceeds of this settlement.

In support of the second objection it was strongly urged by the appellants that the liability imposed upon stockholders by section 7, article 11b, supra, is a contractual obligation between the stockholders of the bank and the creditors of that institution, "certain as though it was evidenced by promissory note," and one which the court and receiver had no authority to vary without the consent of each of the creditors of the bank; that the power conferred by section 35, chapter 8, Compiled Statutes, upon the receiver to "sell and compound all bad or doubtful debts when approved by the court or judge," does not confer on the receiver the right to compromise the double liability imposed upon stockholders of a bank by section 7, article 11b, supra.   In State v. Bank of Rushville, 57 Nebr., 608, it was said that "a court appointing a receiver for an insolvent bank may authorize the receiver to settle and compromise a suit instituted by himself in behalf of the estate, where it appears that as large a sum will probably be realized in that way as if the litigation was continued, or it is disclosed that the best interests of the estate require that such settlement be effected." The only difference between the issues involved in State v. Bank of

*Rushville, supra,* and the issues involved in the case at bar, was that the receiver in the former case had begun an action against the stockholders of the bank to enforce the double liability imposed upon them by the constitution before the offer of compromise was made, while in the case at bar suit had been ordered, but had not been actually instituted, when the offer of compromise was made and accepted. In the later and unreported case of *Morrison v. Lincoln Savings Bank and Safe Deposit Co.*, 1 Nebr. [Unof.], 449, a compromise of the same liability with the stockholders, made by the direction and with the approval of the trial court, was sustained by this court. But it is urged that no distinction was made in either of the cases just cited between the right to compromise doubtful claims owing to the bank, and the right to compromise liabilities of stockholders to creditors of the bank which could not be enforced at a suit of the bank against its stockholders. If the receiver simply acted as the representative of his suspended bank, this objection would be well taken; but in the case of *State v. Nebraska Savings & Exchange Bank,* 61 Nebr., 496, this court, speaking through HOLCOMB, J., says: "The office of the receiver is to aid and assist the court in the collection and distribution of the assets of the insolvent bank. He is, as it were, a special officer of and under the orders and direction of the court. 'He is the arm of the court.'" In discussing the rights and duties of a receiver in winding up the affairs of an insolvent corporation, the supreme court of Minnesota, in the case of *Minnesota Threshing Mfg. Co. v. Langdon,* 44 Minn., 37, 39, 46 N. W. Rep., 310, says: "The sequestration of the property of a corporation by an adjudication of its insolvency, and the appointment of a receiver of its property and effects, under the provisions of chapter 76, is in the nature of an attachment or execution in behalf of all its creditors. The receiver has substantially the same powers and functions as an assignee in bankruptcy, or a receiver upon a creditor's bill or proceedings supplementary to execution.

He succeeds to the rights of the creditors as well as of the insolvent corporation, and has the power to enforce the rights which the creditors, but for the proceedings, might have enforced in their own behalf.  The proceedings were intended to provide a complete and full remedy; and this they could not do unless their scope is to apply, to the satisfaction of the creditors, all property which, but for the proceedings, they could have so applied." See, also, *Howarth v. Lombard,* 175 Mass., 570.  We are therefore of the opinion that the receiver, as "the arm of the court," representing the interests alike of the insolvent bank and of all the creditors of it, may, under the authority conferred by section 35, chapter 8, *supra,* by the approval of the court, compromise and compound doubtful and uncertain claims against the stockholders of a bank for the double liability imposed upon them by section 7, article 11*b, supra,* and we recommend that the judgment of the district court be affirmed.

BARNES, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

POUND, C., concurring.

The difference in terms and subject-matter between section 4 of the article of the constitution relating to miscellaneous corporations, and section 7 of the same article, is such that if the question were a new one it would deserve very serious consideration.  But a long line of decisions seems to have established a construction of the latter section which can not be departed from at this time without mischievous consequences.  In *Farmers' Loan & Trust Co. v. Funk,* 49 Nebr., 353, and *Hastings v. Barnd,* 55 Nebr., 93, the provisions of section 4 as to the conditions precedent to enforcement of the liability were read into section 7.  In *Farmers' Loan & Trust Co. v. Funk* it was held also that the liability created by section 7 must

be enforced by the receiver of the corporation, if there is a receiver; and in *Brown v. Brink,* 57 Nebr., 606, that a creditor has no standing in a suit brought under said section unless the receiver is mismanaging his trust. This court had previously stated in *Farmers' Loan & Trust Co. v. Funk* that the effect of section 7 was to create a trust fund to be collected and administered for the benefit of creditors, and that proposition was reiterated in *Pickering v. Hastings,* 56 Nebr., 201.. The logical result of these decisions is to be found in *State v. State Bank of Rushville,* 57 Nebr., 608, and *Morrison v. Lincoln Savings Bank & Safe Deposit Co.,* 1 Nebr. [Unof.], 449. If the liability in question is considered as creating a trust fund, to be administered by the receiver if there is one, or if none, by the court in a suit in equity, for the benefit of creditors generally, and not a relation of debtor and creditor between stockholders and creditor directly, these decisions are inevitable. Where there are many creditors, the trust fund must be administered in the general interest. Although some individuals might desire that every stockholder be required to pay the full sum for which he is holden, even if the litigation necessary to that end consumed the entire proceeds, the receiver, as trustee, and the court in supervising his acts as such, must consider the advantage of the creditors as a whole, and take such proceedings as will be likely to promote their interests; not forgetting that expedition and saving of expense are sometimes as much to be desired as holding each stockholder to his full duty. The general rule is that any trustee, acting in good faith, may compound a debt due to the trust estate. 2 Perry, Trusts, sec. 482. Compromises by executors, administrators and other trustees are provided for by statute. After this court had determined that said section 7 creates a trust fund, the construction of section 35, chapter 8, Compiled Statutes as authorizing a settlement of the stockholders' liabilities, was a matter of course.

It seems proper to say, also, that while I concur in the opinion and conclusions of my Brother OLDHAM, I think

this court ought to state clearly and emphatically, that compromises of this sort should be thoroughly investigated and maturely considered before they are authorized. This does not mean that undue delay or expense should be suffered by reason of factious opposition, desire to harass individuals claimed to be liable, or attempts to extort money. But the proceeding is undeniably capable of abuse, and it would be most unfortunate to permit any impression to go abroad that ill-considered or collusive compromises will be tolerated.