CLAUDE T. WEIMER AND ASSOCIATION OF COMMONWEALTH CLAIMANTS, AN UNINCORPORATED ASSOCIATION, APPELLANTS AND CROSS-APPELLEES, V. PAUL AMEN ET AL., APPELLEES, COMMERCE GROUP, INC., ET AL., APPELLEES AND CROSS-APPELLANTS.
455 N.W.2d 145

Filed May 11, 1990.   Nos. 88-430, 88-652.

288

Robert R. Gibson, of Professional Legal Associates of Nebraska, P.C., for appellants.

Robert M. Spire, Attorney General, and Charles E. Lowe for appellees Amen and Lake.

Gary L. Dolan, Trev E. Peterson, and Shirley K. Poland-Williams, of Knudsen, Berkheimer, Richardson & Endacott; James B. Cavanagh, of Erickson & Sederstrom, P.C.; John M. Guthery and Gregory H. Perry, of Perry, Guthery, Haase, & Gessford, P.C.; Baird, Holm, McEachen, Pedersen, Hamann & Strasheim; Cline, Williams, Wright, Johnson & Oldfather; Faegre & Benson; and Crosby, Guenzel, Davis, Kessner & Kuester for appellees Commerce Group et al.

BOSLAUGH, WHITE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and RONIN and COLWELL, D. JJ., Retired.

PER CURIAM.

Claude T. Weimer, for himself, and the Association of Commonwealth Claimants, an unincorporated association, as assignees of various depositors of the Commonwealth Savings Company, brought an action against the defendants, alleging numerous improprieties in the management and supervision of the Commonwealth Savings Company, resulting in its subsequent insolvency, collapse, and liquidation. The defendants are Paul Amen, former director of the Department of Banking and Finance of the State of Nebraska; Barry Lake, former Department of Banking and Finance general counsel; various financial institutions, including members of the Nebraska Depository Institution Guaranty Corporation (NDIGC); and certain employees of the financial institutions, including the directors of the NDIGC.

Amen and Lake filed a motion for summary judgment, alleging that the causes of action against them were released by

the settlement of a tort claim by the receiver of the Commonwealth Savings Company, said settlement being approved by order of the district court for Lancaster County, funded by the Legislature, and paid by the State Treasurer to the receiver. The district court sustained the motion and dismissed the petition as to Amen and Lake.

The remaining defendants filed demurrers to the amended petition, claiming, among other things, that plaintiffs were not the real party in interest and therefore lacked standing to bring suit. The district court sustained the demurrers on this basis and dismissed the petition, as it contained an incurable defect.

The plaintiffs appealed from the order granting summary judgment (case No. 88-430) and from the judgment sustaining the defendants' demurrers and dismissing the plaintiffs' petition (case No. 88-652). As both appeals are from a single district court case and present essentially the same issues, we will consider and dispose of both appeals in a single opinion.

A review of the receivership proceedings in the matter of the insolvency of Commonwealth Savings Company is set forth here in order to explain how the case at bar arrived at the present juncture.

The Commonwealth Savings Company (hereafter Commonwealth) was an industrial loan and investment company in Lincoln, Nebraska. On November 1, 1983, the Department of Banking and Finance (hereafter the department) took possession of Commonwealth pursuant to Neb. Rev. Stat. §§ 8-416 (Reissue 1987) and 8-187 (Reissue 1983). On November 8, 1983, the district court for Lancaster County issued an order declaring Commonwealth insolvent and appointed the department as the receiver and liquidating agent of Commonwealth according to § 8-416 and Neb. Rev. Stat. § 8-198 (Reissue 1983).

The receiver proceeded to file with the State Claims Board two tort claims against the State of Nebraska pursuant to the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 et seq. (Reissues 1981 & 1987 & Supp. 1983). The first claim was filed on December 23, 1983, on behalf of the creditors of Commonwealth against the State, its officers, and employees for $56 million. The creditors alleged that negligent, willful,

wanton, and fraudulent acts of the officers and employees caused the creditors' losses.

The second claim, filed on January 10, 1984, for $56,433,959.29, was brought on behalf of "a special class of creditors — those certificate of indebtedness holders who have a unique and special claim under the Nebraska Depository Institution Guaranty Corporation Act, Sections 21-17,127 through 21-17,145 R.R.S. Nebr. 1943 (Reissue 1977)." This claim essentially stated the same allegations against the same persons as in the first claim, and made further allegations attacking the constitutionality of Neb. Rev. Stat. § 21-17,141 (Reissue 1987).

The State Claims Board heard these claims on February 13, 1984, and on February 29 adopted a "decision" as to the claims. The decision enunciated that "the Board has decided that there is a strong possibility of some liability on the part of the State of Nebraska arising out of certain actions of the Banking Department with regard to the Nebraska Depository Institution Guaranty Corporation Act." Based on its deliberations, the board decided that, pursuant to its statutory authority in § 81-8,211 (Reissue 1987), the State should compromise and settle the claims.

It is also provided in § 81-8,211 that any claim settled in an amount of more than $5,000 shall be submitted for approval by the district court for Lancaster County. The claims were thus submitted, and on March 2, 1984, a journal entry was filed by the district court's presiding judge ordering that a three-judge panel decide the matter due to the complexity of the legal issues presented, the public interest in the matter, and the need for a prompt decision by the court. On March 5, one of the judges was excused from service in the case, and the matter proceeded before a two-judge panel.

A hearing was held on March 12 where evidence was adduced and briefs were submitted to the court on the matter of approval of the State Claims Board's proposal of settlement.

On March 16, the district court denied the petition and application seeking approval of the State Claims Board's "decision" of February 29. In its 30-page order, the court determined that it was required to exercise its discretion and

was not merely a "rubber stamp" with respect to action of the board, basing this determination on case law and the following portion of § 81-8,211: "The court may deny the application for any legal and sufficient reason, or may direct the State Claims Board to conduct further hearings on any material issues."

The court found that the decision of the State Claims Board

(1) Is not a compromise, settlement or allowance of a claim and therefore such action is in excess of the Board's authority.

(2) Is unsupported by competent, material and substantial evidence in view of the entire record.

(3) Is based on conclusions of law which are clearly erroneous and unsupported by any evidence in the record to the contrary.

(4) Is arbitrary and capricious.

The court clearly went to great lengths in striving to discharge its duty of making a *legal* determination of whether the board's decision should be approved, as seen in part of the dicta in the court's order:

Were it within our power to base our approval on moral grounds or on concepts of fundamental fairness, we would not hesitate to do so. However, our decision, as the structure of society as a whole, must rest upon the rule of law. . . . Almost all applicable law is clearly contrary to the position taken by the Receiver. The statutes are clear.

. . . Frankly, we do not and cannot expect the majority of these people [who suffered grievous losses] to understand or appreciate the decision we must make which may appear to be based on legal technicalities. However, we are not free to depart from the law as clearly set forth in applicable statutes and judicial decisions.

Upon the receiver's motion, the matter was remanded to the State Claims Board. On April 2, the receiver filed a miscellaneous (contract) claim with the board. The contract claim essentially alleged that the NDIGC was an agency or instrumentality of the State, and therefore the State should be obligated to pay up to $30,000 on each of the guaranteed accounts at Commonwealth.

On June 12, 1984, the State Claims Board filed an amended

petition and application in the district court for Lancaster County. The amended petition stated that on May 25, 1984, the State Claims Board held a further hearing pursuant to duly publicized notice with regard to the receiver's tort and contract claims. The amended petition further stated that the State Claims Board unanimously adopted both a decision and an "Agreement for Compromise of Tort Claim" at a duly publicized open meeting on May 31. This second decision by the board declared that, after considering both claims but without deciding the contract claim, a compromise settlement should be executed in the amount of $33 million. The amended petition and application therefore sought approval of the settlement in the district court, as required by § 81-8,211.

After a hearing on the matter on July 10, 1984, the district court issued a 46-page order on July 27 which denied approval of the board's "decision" of May 31 for the following reasons:

a. Our conclusions as to the law applicable to this matter are substantially the same as expressed in our prior Order. The law, particularly in light of the decision in Varig Airlines [467 U.S. 797, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (1984)], is not supportive of the Receiver's position. Therefore, the Receiver's probabilities of success should the claim be litigated are not encouraging.

b. There has been an inadequate showing as to the amount of damages which reasonably may be incurred, particularly in regard to the valuation of the remaining assets of Commonwealth.

c. This proposed settlement, like the prior decision, virtually provides for reimbursement of one hundred percent of the possible loss when the liquidating value of the assets is included. Based on the likelihood of success should the claim be litigated, the Decision of the Board clearly is excessive and is not a fair and reasonable settlement when confronted with the minimal likelihood of liability.

d. The Decision of the Board is based on conclusions of law which are clearly erroneous.

Pursuant to stipulation of the parties filed on October 30, the district court remanded the matter to the State Claims Board

for the sole purpose of allowing the receiver to withdraw the claim, pursuant to § 81-8,213 (Reissue 1987), and to file suit on the claim.

The record further shows that the receiver proceeded to file suit against the State of Nebraska on March 20, 1985, in the district court for Lancaster County. The receiver alleged numerous (33) acts of wrongful and negligent conduct by the department in failing to supervise, regulate, and examine Commonwealth, including wrongful and negligent conduct of the department's director in admitting Commonwealth as a member of the NDIGC. The State's answer generally denied all allegations in the receiver's petition.

On March 29 the parties to the action filed an application for approval of settlement pursuant to § 81-8,218 (Reissue 1987), requesting the court's approval of a compromise settlement of all claims of the plaintiff, holders of all certificates of indebtedness of plaintiff, and all other creditors of plaintiff. Conditions of the settlement included the payment to the receiver of the sum of $8.5 million as a full and complete compromise settlement of any and all claims of the receiver (on behalf of itself and its representatives) against the State, the department, and their past, present, and future officials and employees. A release of all claims by the receiver to be executed upon payment of the $8.5 million accompanied the application.

As the settlement affected the initial district court receivership proceedings wherein Commonwealth was first declared insolvent, the receiver also filed therein, on April 1, 1985, an application requesting that the district court set a hearing date for the application for authority to settle in the receiver's suit against the State and to authorize notice of the hearing to Commonwealth creditors by sending a notice to each creditor by mail, and by publication in a newspaper of general circulation for three consecutive weeks prior to the hearing.

The district court entered orders dated April 1 in each of the aforementioned cases, setting the hearing for April 22 and approving the form and method of notice to the creditors. On April 15, the presiding judge of the district court for Lancaster County appointed a two-judge panel to consider the matter.

After the hearing, the court entered an order on April 26 that

the application for approval of settlement be approved and forwarded to the Legislature for review and the appropriation of funds. In its order, the court found that proper notice had been given to the creditors pursuant to law and the order of the court. The court noted that the substantial majority of creditors who expressed an opinion at or before the hearing were either opposed to the proposed settlement or had reservations concerning the terms of the release or the future actions of the Legislature. The court stated, however, that it could not modify the proposed amount of the settlement or any of its provisions. The court had only the authority to approve or disapprove.

The court said that in reviewing the proposed settlement it adhered to its statement in the prior orders denying the State Claims Board's proposed settlement: " 'Therefore, this court, in exercising its discretion herein must reach a conclusion as to the likelihood of liability on the part of the State, the amount of damages resulting from such liability and whether any proposed settlement is fair, adequate and reasonable to both the claimants and the State.' "

Thus reviewing the matter, the court concluded that the proposed settlement was fair, adequate, and reasonable to both the claimants and the State, and could find no legal or other reason to disapprove it. The court also entered an abbreviated order approving the settlement in the initial Commonwealth matter of insolvency.

The record shows that a state treasury warrant was issued to the receiver in the amount of $8,518,228.09 and that the release was signed on September 26, 1985, by the receiver.

## INTERPRETATION OF § 8-199

Appellants assign error to the district court in its interpretation of Neb. Rev. Stat. § 8-199 (Reissue 1983). Statutory interpretation is a matter of law in connection with which this court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *Sorensen v. City of Omaha*, 230 Neb. 286, 430 N.W.2d 696 (1988). The general rules governing statutory construction and interpretation provide that in the absence of anything indicating to the contrary, statutory language is to be given its

plain and ordinary meaning; this court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. Furthermore, it is not within the province of this court to read a meaning into a statute which is not warranted by the legislative language; neither is it within the province of this court to read anything plain, direct, and unambiguous out of the statute. In construing a statute it is presumed that the Legislature intended a sensible, rather than an absurd, result. *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989).

We find that the plain, direct, and unambiguous language of § 8-199 allows the receiver to enforce "all debts or other obligations of whatever kind or nature due" to the creditors of the failed institution, including those asserted by the appellants. This construction is consistent with the role of a corporate receiver:

> A corporate receiver represents not only the corporation, but all its creditors, and as to the latter it is his duty to secure all the assets available for their payment. For this purpose he succeeds to their rights, and has all the powers to enforce such rights that the creditors before his appointment had in their own behalf, even though such powers be beyond those which he has as the representative of the corporation alone.

66 Am. Jur. 2d *Receivers* § 450 (1973).

Appellants contend that they alone can enforce their alleged causes of action, and cite as a proposition of law that the receiver of an insolvent institution may not take possession of property that did not belong to the insolvent institution. Appellants cite *Frederick v. McRae*, 157 Minn. 366, 196 N.W. 270 (1923), in support of this proposition. That case holds that a depositor can have an individual right of action in deceit which could not be brought by the receiver if the bank officers fraudulently accepted deposits while knowing the bank was insolvent. Nebraska law has long recognized that a depositor may have an individual action under this scenario. See, *Higgins v. Hayden*, 53 Neb. 61, 73 N.W. 280 (1897); *Wilson v. Coburn*, 35 Neb. 530, 53 N.W. 466 (1892). However, appellants do not sufficiently state such a cause of action.

We believe that appellants' alleged actions are properly characterized in *In re Sunrise Securities Litigation*, 108 Bankr. 471, 476 (E.D. Pa. 1989):

> In general, "wrongs committed by a bank's officers or directors that injure all depositors and creditors alike create a liability which is an asset of the bank itself and for which only the bank or its receiver may recover." *In re Longhorn Securities Litigation*, 573 F.Supp. 255, 272 (W.D. Okla.1983), *citing Adato v. Kagan*, 559 F.2d 1111, 1117 (2d Cir.1979). Under such circumstances, "[t]he damage to depositors is indirect only and it is generally recognized that for such matters a depositor has no direct and individual right of action against a director." *Michelsen v. Penney*, 10 F.Supp. 537, 539 (S.D.N.Y.1934). *See* 1 Michie, *Banks and Banking*, Ch. 3, § 69, at 479 (1986) ("where the amount for which the officers and directors may be liable results from matters affecting all creditors, they constitute assets of the corporation for the benefit of all depositors and creditors, and suit therefor must be brought by the bank or its receiver") . . . .

*In re Sunrise Securities Litigation* further holds that when a depositor claims to have been defrauded by a misrepresentation or omission in a statement directed to the general public, he or she does not allege a wrong that is distinctly the depositor's and not common to other depositors or creditors, and therefore claims an indirect injury.

Appellants' petition alleges that misrepresentations were made to the general public, not to a single depositor or specific group of depositors. Further, appellants allege that the appellees' willful and negligent actions harmed all depositors and, in at least one instance, harmed Commonwealth *creditors*. The petition is not even clear whether the Association of Commonwealth Claimants represents all Commonwealth depositors.

Other cases cited by appellants, including *State, ex rel. Sorensen, v. Nebraska State Bank*, 124 Neb. 449, 247 N.W. 31 (1933), *Brownell v. Adams*, 121 Neb. 304, 236 N.W. 750 (1931), and *Rogers v. Selleck*, 117 Neb. 569, 221 N.W. 702 (1928), affirm the acts of the respective receivers in enforcing causes of

action on behalf of creditors and are not supportive of appellants' contention that they distinctly own their alleged causes of action.

We therefore find that the appellants have not alleged an individual harm, but that their claims are derivative and clearly are properly pursued by the receiver under § 8-199.

The appellants also challenge the constitutionality of § 8-199, alleging that it denies access to the courts, deprives appellants of due process, and takes property of citizens for a public purpose without just compensation. In *Department of Banking v. Hedges*, 136 Neb. 382, 286 N.W. 277 (1939), this court upheld the constitutionality of a receivership procedure under predecessor statutes which allowed the Department of Banking and its superintendent to bring actions on behalf of creditors. Therein we stated:

In 9 C.J.S. 170, sec. 88, it is said:

"However, unless the Constitution specifically prescribes and limits the persons by whom such actions may be brought, it is within the power of the legislature to authorize particular persons to sue, and statutes conferring such authority have been sustained. Further, since such legislation is procedural, and since methods of procedure which do not affect the substantial rights of the parties are within the control of the legislature where no new right is created nor any penalty imposed, a statutory change as to the person who may enforce the liability may apply to stockholders who became such before its enactment as well as to those who became such thereafter. . . ."

. . . .

In *Luikart v. Bunz,* [125 Neb. 867, 252 N.W. 473 (1934)], the effect of the decision is: ". . . No vested rights are impaired by statutory or constitutional provision which creates a remedy for an existing right."

*Hedges, supra* at 393-94, 286 N.W. at 284.

We have also more recently held that, in regard to obtaining a remedy through the courts, article 1, § 13, of the Nebraska Constitution is not violated when one party brings an action on another's behalf. See, e.g., *Pullen v. Novak*, 169 Neb. 211, 99

N.W.2d 16 (1959) (guardian or next friend may sue on behalf of infants to recover damages done to their person or property by tortious acts of another). Likewise, we hold that § 8-199 merely imposes a procedural remedy which does not affect the substantial rights of the parties, and therefore does not unconstitutionally deny appellants access to the courts.

Regarding the due process challenge, both appellants and appellees cite *Rein v. Johnson*, 149 Neb. 67, 30 N.W.2d 548 (1947), *cert. denied* 335 U.S. 814, 69 S. Ct. 31, 93 L. Ed. 369 (1948). That case sets forth the following on due process:

> The primary purpose of that constitutional guaranty is security of the individual from the arbitrary exercise of the powers of government unrestrained by the established principles of private rights and distributive justice. 12 Am. Jur., Constitutional Law, § 575, p. 271.
>
> As related to legislation, it is generally held that due process is satisfied if the Legislature had the power to act on the subject matter, if that power was not exercised in an arbitrary, capricious, or unreasonably discriminatory manner, and if the act, being definite, had a reasonable relationship to a proper legislative purpose. In other words, if an act of the Legislature is authorized and promulgated by the inherent and reserved constitutional powers of the state, and is enforced with due regard to and observance of the rules established by our system of jurisprudence for the security of life, liberty, and property, it is not in conflict with due process of law. 16 C.J.S., Constitutional Law, § 569, p. 1156.

*Rein, supra* at 82, 30 N.W.2d at 557-58.

As our previous discussion shows, the Legislature clearly had the power to enact § 8-199 as a procedural remedy. Further, the statute has a reasonable relationship to the receiver's purpose of wrapping up the business of the insolvent institution and treating all creditors equitably and fairly. The statutory scheme of a receivership seeks to avoid preferences among creditors, to avoid a multiplicity of lawsuits and races to the courthouse, and to give the receiver meaningful authority to pursue claims, negotiate compromise settlements, and execute binding releases. Finally, in granting the receiver broad authority to

enforce claims on behalf of not only the failed institution but of shareholders and *all* creditors in order to accumulate all possible assets, the power of the Legislature was exercised in neither an arbitrary, capricious, nor unreasonably discriminatory manner. We therefore find that § 8-199 satisfies due process requirements.

Lastly, we find no merit in appellants' argument that § 8-199 allows an unconstitutional taking. We have determined that § 8-199 allows the receiver to enforce the appellants' causes of action. Simply stated, appellants' "property" is not being taken without compensation, but, rather, the enforcement of those rights is given to the receiver (pursuant to the Legislature's power to do so) in order to secure compensation for all creditors in an equitable and nonpreferential manner.

We therefore find no merit in appellants' constitutional challenges to § 8-199.

### DEFENDANTS AMEN AND LAKE

There is no dispute that Amen and Lake, as department employees, were properly made defendants in the receiver's suit against the State and in the case at bar. The receiver's petition in its action against the State makes 33 separate allegations of "*wrongful* and negligent conduct of the Department, its Director and its employees," which necessarily encompass the appellants' causes of action against Amen and Lake. The appellants merely contend that they, and not the receiver, are the proper parties to bring their causes of action. Such contention, as we have stated, is without merit.

Appellants also assign error to the district court in accepting a release signed by the receiver as a bar to this action. The receiver's ability to settle or compromise any doubtful debts is enumerated in § 8-199 and Neb. Rev. Stat. §§ 8-1,103 and 8-1,104 (Reissue 1983). The receiver's ability to settle a doubtful debt has also been upheld by this court. See *State v. German Savings Bank*, 65 Neb. 416, 91 N.W. 414 (1902). After going through the State Claims Board and having a proposed settlement rejected twice, the receiver clearly saw this claim as a doubtful debt and therefore entered into a compromise settlement in its claim against the State. Further, the receiver is

empowered, under § 8-199, to "make, execute, and deliver any and all . . . instruments necessary and proper to effectuate . . . the settlement of any obligations . . . ." The same power specifically stating "releases" is also granted in § 8-1,103. Section 81-8,223 (Reissue 1987) provides that an award in a state tort claim shall constitute a complete release by the claimant of any claim against the State and against the employee of the State whose act or omission gave rise to the claim, by reason of the same subject matter. The receiver was therefore within its statutory authority in executing the release as a necessary and proper instrument to effectuate the settlement.

Summary judgment is proper when the pleadings, depositions, and admissions on file, together with affidavits, show there is no genuine issue as to any material fact or as to the ultimate inferences which may be drawn from the material facts, and the moving party is entitled to judgment as a matter of law. *Peterson v. Don Peterson & Assoc. Ins. Agency*, 234 Neb. 651, 452 N.W.2d 517 (1990); *John v. OO (Infinity) S Development Co.*, 234 Neb. 190, 450 N.W.2d 199 (1990). In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Peterson, supra; John, supra.* .

Viewing the evidence in a light most favorable to appellants, our conclusion remains that the receiver acted at all times within its statutory authority and that Amen and Lake, by virtue of the release, were entitled to summary judgment as a matter of law.

### REMAINING DEFENDANTS

The district court sustained the remaining defendants' demurrers on the basis that the plaintiffs were not the real party in interest and therefore lacked the capacity to bring suit. See Neb. Rev. Stat. § 25-806 (Reissue 1989).

In reviewing an order sustaining a demurrer, this court accepts the truth of facts well pled and the factual and legal inferences which reasonably may be deduced from such facts, but does not accept conclusions of the pleader. *St. Paul Fire &*

*Marine Ins. Co. v. Touche Ross & Co.,* 234 Neb. 789, 452 N.W.2d 746 (1990); *Meyerson v. Coopers & Lybrand,* 233 Neb. 758, 448 N.W.2d 129 (1989); *S.I.D. No. 272 v. Marquardt,* 233 Neb. 39, 443 N.W.2d 877 (1989). In ruling on a demurrer, the petition is to be liberally construed; if as so construed the petition states a cause of action, the demurrer is to be overruled. *Meyerson, supra; S.I.D. No. 272, supra.*

We have determined that appellants' actions are derivative and that they have not suffered individual harm upon which they can sue directly. Their actions are properly brought by the receiver. However, the record shows that the receiver sued only the State of Nebraska, the department, and its employees. If the appellants in fact state a cause of action against the NDIGC or other defendants, this leaves Commonwealth, its creditors, and its depositors with a claim which the receiver failed or neglected to pursue.

The liability of the NDIGC and the State toward the depositors was alleged in the second claim brought before the State Claims Board by the receiver. This raises the question of whether the NDIGC is an agency of the State; for if it is, it would be free of liability by virtue of the release executed by the receiver. The State Tort Claims Act, § 81-8,210(1) (Reissue 1987), says that for the purposes of the act: "State agency shall include all departments, agencies, boards, bureaus, and commissions of the State of Nebraska, and corporations whose primary function is to act as, and while acting as, instrumentalities or agencies of the State of Nebraska, but shall not include corporations that are essentially private corporations."

The Nebraska Depository Institution Guaranty Corporation Act, Neb. Rev. Stat. §§ 21-17,127 et seq. (Reissue 1987), lists four purposes of the act in § 21-17,128. One of those purposes involves a duty of the department "[t]o assist in the detection and prevention of depository institution insolvencies or liquidations," while the other purposes relate solely to the objectives and operations of the corporation. In § 21-17,132 the act gives the corporation all powers granted to nonprofit corporations (which are not state agencies) as provided in Neb. Rev. Stat. ch. 21, art. 19 (Reissue 1987). Sections 21-17,134 and

21-17,136 indicate that the department acts in a supervisory or regulatory role toward the NDIGC, just as it does with all chartered financial institutions—most of which are private corporations. The NDIGC is formed by private financial institutions, and the members of its board of directors must be officers of those institutions. See §§ 21-17,132 and 21-17,133. The corporation is operated neither by state employees nor at the direction of state government.

An examination of the legislative history of the act shows that the corporation was not intended to be an arm or instrumentality of the State. Testimony on 1976 Neb. Laws, L.B. 948 (the provisions of which would eventually become the NDIGC act), was presented at a hearing before the Banking Committee. James Moylan, a proponent of the bill, stated:

> I think if you want to take the Banking Department and then show the areas that it operates in, it will be banks, industrials, credit unions, savings and loans and right along beside it will be the guaranty corporation. And their relationship to it will be conducted pretty much by this act when you get over to the Banking Act, it's this way with banks; it's this way with credit unions; it's this way with savings and loans; so, it would be another institution that they would have.

Banking Committee Hearing, L.B. 948, 84th Leg., 2d Sess. 25 (Jan. 27, 1976).

Charles Aron of the department stated: "It is our understanding of the concept of this type of a corporation to basically insure the deposits in the credit unions with this as a complement to the supervision done by the Department of Banking not in lieu of supervision." *Id*. at 29.

Further, William Riley, director of the department, stated:

> [T]he Department is not looking to this type of legislation to make our job a [sic] regulation and supervision of both credit union and cooperatives easier for us. . . .
>
> . . . .
>
> . . . Well, I guess the feeling that I don't want to give this committee because I've demonstrated it to the credit unions, is that we are not using this as an arm for better supervision and regulation.

*Id.* at 31, 33.

Based on our reading of the act and its legislative history (in particular the foregoing statements), we conclude and find that the NDIGC is an "essentially private" corporation and is not an instrumentality or agency of the State of Nebraska. Consequently, appellants have stated a cause of action at least against the NDIGC based on statutory and common-law contractual liability toward Commonwealth and its depositors.

Although the receiver was the proper party to enforce that liability, the appellants are not left without a remedy in this situation. While § 8-199 gives the receiver broad authority to enforce claims on behalf of the bank, its shareholders, and creditors, we find that the shareholders and creditors must be afforded relief when the receiver fails or neglects to enforce a claim. Therefore, in remaining consistent with general corporate law and the federal common law, we hold that a depositor may bring a derivative action to recover for wrongs against the bank or financial institution, which wrongs have indirectly injured depositors, but only after having made an unsuccessful demand on the bank or its receiver to bring suit. See, *In re Sunrise Securities Litigation*, 108 Bankr. 471 (E.D. Pa. 1989); *Landy v. Federal Deposit Insurance Corporation*, 486 F.2d 139 (3d Cir. 1973); *Michelsen v. Penney*, 10 F. Supp. 537 (S.D.N.Y. 1934).

In order for appellants to state a derivative action, their petition must allege the fact that a demand has been made on the receiver or that such a demand would be futile. The petition makes no such allegation, thereby failing to allege facts sufficient to constitute a cause of action. Consequently, we affirm the action of the trial court in sustaining the demurrers, but for the reason set forth above. See *Grone v. Lincoln Mut. Life Ins. Co.*, 230 Neb. 144, 430 N.W.2d 507 (1988) (where the record demonstrates that the decision of the trial court is correct, although such correctness is based on a different ground from that assigned by the trial court, the Supreme Court will affirm).

The defense of the statute of limitations is raised by way of cross-appeal or otherwise in the briefs of certain appellees. However, as the district court made no ruling on this issue, we

decline to express an opinion on the matter at this time and leave to the trial court the propriety of this defense and any others that may arise after the appellants are given an opportunity to amend their petition.

The order in case No. 88-430 granting summary judgment to defendants Amen and Lake is affirmed. In case No. 88-652, we affirm the order of the trial court in sustaining the demurrers, but reverse that part of the trial court's order dismissing the petition and remand this cause with directions to allow the appellants to amend their petition.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.