40

BROWN *v.* NATIONAL CITY BANK ET AL.

(No. 82-CVE-89496—Decided May 11, 1983.)

Cleveland Municipal Court.

*Mr. John W. Gallagher,* for plaintiff.
*Mr. Arthur J. Tassi,* for defendants.

ADRINE, J.

### Findings of Fact

1. Plaintiff, Elsie Mae Brown, at all times pertinent hereto was an employee of defendant St. Luke's Hospital.

2. During the period in question, St. Luke's Hospital and defendant National City Bank were parties to an agreement whereby employees of the former who qualified for loans with the latter could arrange for the repayment of said loans by means of payroll deductions.

3. No other financial institution enjoyed the same status with St. Luke's Hospital during the pertinent period.

4. Plaintiff entered into a loan agreement numbered 3640-9317-10 with National City Bank in August 1980 and arranged for repayment of the obligation by means of payroll deductions through St. Luke's Hospital, at the rate of $32.21 every two weeks.

5. Plaintiff already had two additional loans with National City Bank. These two precedent loans were not to be repaid through payroll deductions.

6. On October 1, 1980, plaintiff filed a petition for voluntary bankruptcy in the United States District Court for the Northern District of Ohio.

7. National City Bank was named as a creditor, as required, with regard to all three of the outstanding loans aforementioned.

8. Counsel for National City Bank appeared at the first meeting of creditors held in the bankruptcy court on October 21, 1980.

9. Plaintiff was subsequently discharged in bankruptcy in January 1981.

10. St. Luke's Hospital continued to withhold loan installments from plaintiff's checks after the petition in bankruptcy was filed and after the plaintiff was discharged in bankruptcy.

11. National City Bank continued to apply the withheld loan installments against the balance of account number 3640-9317-10 after the plaintiff filed her petition in bankruptcy and after the debt was discharged in bankruptcy.

12. Plaintiff made numerous requests subsequent to the filing of her petition in bankruptcy, both to National City Bank and to St. Luke's Hospital, for an end to the payroll deductions for account number 3640-9317-10.

13. Neither defendant followed her requests.

14. Plaintiff's counsel contacted National City Bank in January 1982, first by telephone and then by mail, and demanded that the deductions be halted.

15. National City Bank thereafter contacted St. Luke's Hospital and sanctioned the termination of the payroll deductions for the subject account.

16. National City Bank refused to return any of the payroll deductions made subsequent to plaintiff's petition in bankruptcy, maintaining that such deductions were authorized by the plaintiff.

17. The plaintiff flatly denies any such authorization.

18. The total amount withheld after plaintiff filed bankruptcy was $1,030.72.

### Conclusions of Law

This complaint is predicated upon the plaintiff's assertion that the actions of St. Luke's Hospital (hereinafter "the hospital") and National City Bank (hereinafter "the bank") jointly and severally, constitute knowing violations of the United States bankruptcy laws, resulting in a conversion of $1,030.72 of

the plaintiff's personalty to their own use. The defendants have pleaded, affirmatively, that the continuation of the payroll deductions complained of resulted from the plaintiff's own actions and/or inactions and not through any fault of them. They also have affirmatively pleaded that the plaintiff's complaint fails to state a claim against them upon which relief can be granted.

## I
## Violation of the Bankruptcy Laws
## A
## In re the Bank

The plaintiff, along with her husband, filed a joint petition for voluntary bankruptcy on October 1, 1980, in the United States District Court for the Northern District of Ohio, Eastern Division. Sections 362(a)(3) and (6), Title 11, U.S. Code, outline, when read in pertinent part, the following effects of filing such a petition:

"(a) * * * a petition filed under * * * this title operates as a stay, applicable to all entities, of —
"* * *
"(3) any act to obtain property of the estate [of the bankrupt] or property from the estate;
"* * *
"(6) any act to collect, assess, or recover a claim against the debtor that arose before commencement of the case under this title;"

This stay is automatic upon the filing of the petition in bankruptcy. It acts as a specific and definite order of court so as to restrain creditors from continuance of judicial process or collection efforts against the debtor. *In re Demp* (E.D. Pa. 1982), 23 Bankr. 239, 240. Actions taken which are, in fact, violative of the stay are void and without legal basis. *In re Johnson* (S.D. Ohio 1982), 18 Bankr. 755, 756.

The evidence in the case at bar clearly supported the plaintiff's contention that the bank knew that plaintiff had filed bankruptcy, and was, therefore under the protective wing of the automatic stay provisions of the bankruptcy laws. Not only were three notices forwarded to the bank with regard to the plaintiff's pending petition, but there was also evidence that the account which is the subject of the present suit was briefly discussed with a legal representative from the bank at the first meeting of creditors. The bank cannot now be heard to say that it was unaware of plaintiff's pending bankruptcy.

Likewise, having charged the bank with actual notice of the existence of plaintiff's petition in bankruptcy, it follows necessarily that it must also be charged with at least constructive notice of her subsequent discharge in bankruptcy. The effect of a discharge in bankruptcy is set forth in Sections 524(a)(2) and 727(b), Title 11, U.S. Code. As pertinent to the discussion *sub judice,* those sections provide the following instruction:

Section 524(a):
"A discharge in a case under this title—
"* * *
"(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, *whether or not discharge of such debt is waived; * * *."* (Emphasis added.)

Section 727(b):
"* * * a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter * * *."

These sections unquestionably apply to the case before the court. From the date the plaintiff's petition in bankruptcy was filed and relief was ordered, the bank was enjoined from further collection of funds for the debt which underlies this suit. The discharge of a debt in bankruptcy is more than a mere bar to remedy for the creditor. In point of fact the underly-

ing claim is extinguished. See *Mendez* v. *Bruno* (P.R. 1977), 440 F. Supp. 985. The court here notes that pursuant to Section 524(a)(2), the plaintiff is entitled to relief from liability on this debt from the date of the filing of her petition in bankruptcy, whether or not she subsequently agreed, as has been alleged, to further deductions.

## B
## In re the Hospital

The testimony at trial indicated that the plaintiff made numerous oral attempts to have the hospital's payroll department terminate the payroll deductions for the repayment of the discharged bank loan. Additionally, she testified that she attempted to present written instructions to that effect to payroll but was prevented from doing so. To the degree that the hospital assisted and facilitated the bank's collection efforts after notice of the existence of plaintiff's bankruptcy petition, it is liable and answerable to the plaintiff for those actions.

## II
## Jurisdiction

The defendants have pleaded, *inter alia,* the affirmative defense of plaintiff's failure to state a claim upon which relief may be granted by this court. It is axiomatic that the party raising an affirmative defense must establish that defense by a preponderance of the evidence. The defendants in the instant case have presented no evidence to establish such a defense.

Still, the issue of this court's authority to grant relief has been raised and deserves examination. The questions which give rise to the matter before the court are bottomed on the powers and orders of the bankruptcy court. Plaintiff's request for relief is based upon the defendants' failure to adhere to the automatic stay and discharge provisions of the Bankruptcy Code. It would appear, therefore, at first blush, that the proper forum for the redress of the plaintiff's grievance would be the bankruptcy court.

See Section 1471, Title 28, U.S. Code. Subsection (a) of that statute grants to the bankruptcy court both "original and exclusive jurisdiction of all cases under title 11." However, subsection (b) provides that the bankruptcy court "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." Upon consideration, this court finds that the facts presented at trial place the case at bar squarely within the parameters of Section 1471(b). Therefore, this court is as competent to hear and render judgment on the matters at hand as is the bankruptcy court.

## III
## Conversion

Without question the bank was entitled to receive and retain all payments made by the plaintiff up to October 1, 1980. It is equally clear that, under the provisions of Section 1471(e), Title 28, U.S. Code, the bank had no right to receive or retain any property of the plaintiff after October 1, 1980, the date plaintiff's petition in bankruptcy was filed. There is no justification in law or fact for the bank's continued retention of these funds. The court therefore agrees with the plaintiff that the retention of these funds, after proper demand for their release, constitutes a conversion of plaintiff's property by the defendant bank. Again, to the degree that the hospital facilitated the bank's collection effort after notice of the plaintiff's petition in bankruptcy, it must also answer to the plaintiff for the funds withheld.

## IV
## Punitive Damages

The plaintiff has requested that this court issue, in addition to any compensatory order it might make, an order requiring the payment of punitive damages by the defendants for their willful misconduct. Had this matter been brought before the bankruptcy court on a motion to show cause arising from the defen-

dants' alleged contempt for both the automatic stay and the discharge orders of that court, such a remedy would have been available. The court in *In re Augustino Enterprises, Inc.* (Mass. 1981), 13 Bankr. 210, 212, held that the bankruptcy court has the authority to assess punitive damages for bad faith violations of its stay orders. The court in *In re Gibson* (S.D. Ohio 1981), 16 Bankr. 682, 684, added: "The integrity of the bankruptcy process demands that violations of the stay orders of this Court be duly sanctioned."

This matter was not, however, brought in the bankruptcy court. This court does not believe that it is its proper function to enforce the orders of other courts by means of punitive damage awards.

### Judgment Entry

For the foregoing reasons, this court finds for the plaintiff *and against both defendants* in the sum of $1,030.72, plus statutory interest. Costs are assessed to the defendants.

*Judgment for plaintiff.*