**In re D. PAPAGNI FRUIT COMPANY, a partnership, Debtor.**

**MUTUAL INSURANCE COMPANY OF NEW YORK, Plaintiff,**

v.

**COUNTY OF FRESNO, Defendant.**

Bankruptcy No. 187–00586–B–11F. Adv. No. 188–0246.

United States Bankruptcy Court, E.D. California, Fresno Division.

Sept. 30, 1991.

G. Scott Fitzgibbon, Dietrich, Glasrud & Jones, Fresno, Cal., for plaintiff, Mut. Life Ins. Co. of New York.

Howard K. Watkins, Sr. Deputy County of Fresno, Fresno, Cal., for defendant, County of Fresno.

BRETT J. DORIAN, Bankruptcy Judge.

## OPINION

This adversary proceeding arises out of a Chapter 11 case commenced on February 19, 1987. The complaint was filed prior to the debtor's ultimate confirmation of a plan of reorganization. The plaintiff, Mutual Insurance Company of New York, by its prayer seeks "... a determination by this court that the claims of defendant COUNTY OF FRESNO be adjudged a violation of the automatic stay and that they be further adjudged to be unsecured claims of the estate." The plan was confirmed by an order entered on January 19, 1989, approxi-

mately three months subsequent to the filing of this action.

## FACTS

The matter was submitted for decision without the taking of testimony or the admission of any documentary evidence. Stipulations as to certain facts were filed by the parties.

Based on the stipulations of the parties and the documents filed in the main bankruptcy case of which the court may take judicial notice, the only pertinent facts before the court are as follows: that the plaintiff recorded a deed of trust on the subject property on September 10, 1981; that during the pendency of the Chapter 11 proceeding the defendant did not seek or receive relief from the automatic stay; that public records indicated that tax liens for taxes owing to the defendant existed for the fiscal years 1987–1988 and 1988–1989 on the subject property in the total amount of $37,707.63; that subsequent to the filing of the instant proceeding the plaintiff sold the subject property to a third party and that $38,958.41 was paid from the proceeds of the sale to the defendant in satisfaction of the subject taxes in order to facilitate the sale; that the defendant at no time filed a claim in the Chapter 11 proceeding for payment of the taxes; and that the plan of reorganization makes no provision for any obligation secured by the aforementioned deed of trust.

Further, the complaint alleges and the answer admits that as of the filing of this adversary proceeding—a date prior to the confirmation of the debtor's plan—the plaintiff had acquired from the debtor—whether through foreclosure or other form of transfer was not established—ownership of the subject property.

Finally, the case record indicates that an order has been entered, upon a showing of substantial consummation of the confirmed plan, whereby the Chapter 11 case and its administration were closed on April 9, 1990.

## CONTENTIONS OF THE PARTIES

The plaintiff contends, essentially, that the defendant violated the automatic stay by imposing, through a process of various

acts which occurred after the filing of the bankruptcy petition, post-petition liens on the debtor's real property as security for tax assessments for the two tax years noted above.[1] The plaintiff relies on the provisions of 11 U.S.C. § 362(a)[2] and cases such as *In re Parr Meadows Racing Association, Inc.,* 880 F.2d 1540 (2nd Cir.1989), *cert. denied,* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990); *Matter of Ballentine Bros., Inc.,* 86 B.R. 198 (Bkrtcy. D.Neb.1988); *In re Bellman Farms, Inc.,* 86 B.R. 1016 (Bkrtcy.D.S.D.1988); and *In re Carlisle Court, Inc.,* 36 B.R. 209 (Bkrtcy.D.C.1983) which have found the imposition of such liens improper and have accorded appropriate relief.

Although the plaintiff's status changed from secured party to owner of the subject property during the pendency of the Chapter 11 proceeding, the plaintiff claims that it was entitled to acquire ownership free of any burden for property taxes assessable after the filing of the bankruptcy petition.

The defendant argues that the subject taxes were validly secured by liens and relies principally on the approach and reasoning of *Maryland National Bank v. Mayor and City Council of Baltimore,* 723 F.2d 1138 (4th Cir.1983), the similarity of the effect of California Revenue and Taxation Code § 2192.1 and its Maryland counterpart, and the distinctive and distinguishing features of the California scheme for assessing and collecting taxes based on the value of real property ownership.

## DISCUSSION

The main premise of *Maryland* is that § 546(b) allows perfection of the lien to predate the filing of the bankruptcy petition and that the lien is therefore valid by virtue of an exception contained in § 362(b)(3) to the automatic stay. The applicability of § 546(b) was based on the state's "ever-present" and "long standing

interest" in "immovable and ever-present real property" in the state (*Maryland, supra,* at 1142, 1143, n. 14 at 1144).

The cases cited by plaintiff make little real effort to look beyond the strict language of § 362(a) and fail to analyze other than very superficially the impact of their holdings on local governments, real property transactions, and the enormous amount of bankruptcy court litigation which could result if their holdings were to receive broad or even substantial acceptance.

■ For example, the court in *In re Trowbridge,* 74 B.R. 484 (Bkrtcy.E.D.Pa. 1987) in a let-them-eat-cake pronouncement dismisses the taxing authority's need for payment of the ongoing services provided to the property by noting the agency's right to file an administrative claim, a remedy that ignores the fact that in California, as perhaps in many other jurisdictions as well, real property taxes are *in rem* taxes assessable against the property only [*City of Huntington Beach v. Superior Court of Orange County,* 78 Cal.App.3d 333, 340, 144 Cal.Rptr. 236, 240 (1978)] and, unlike virtually every other type of tax imposed, are not in any manner enforceable against an individual or other entity.

■ Collection of *in rem* taxes can only be forced by actual sale of the property impressed with the lien. Thus the tax is not properly recoverable as an administrative claim. If it were made recoverable by some act of the bankruptcy court, such action would improperly transform *in rem* liability into personal liability, a result which apparently did not bother some courts [See, e.g., *Matter of Ballentine Bros., Inc.,* 86 B.R. 198 (Bkrtcy.D.Neb. 1988); *In re Carlisle Court, Inc.,* 36 B.R. 209 (Bkrtcy.D.C.1983), *In re Trowbridge,* 74 B.R. 484 (Bkrtcy.E.D.Pa 1987); *Matter of Isley,* 104 B.R. 673 (Bkrtcy.D.N.J.1989), and *Matter of Mansfield Tire and Rubber Co.,* 96 B.R. 774 (Bkrtcy.N.D.Ohio 1988).]

---

1. The applicable statutory provisions under California law whereby the amount of the real property taxes is determined are found in *California Revenue and Taxation Code,* §§ 601 *et seq.* and 2186 *et seq.,* and *California Government Code,* §§ 29100 *et seq.*

2. Unless otherwise described, all statutory references are to the Bankruptcy Code as contained in Title 11 of the United States Code.

The approach further ignores the fact that all too often Chapter 11 cases result not in a plan of reorganization under which costs of administration are paid upon confirmation, but in a Chapter 7 liquidation, where most Chapter 11 administrative claims are worthless or nearly so.

Acceptance of the rule urged by plaintiff can only cause havoc, confusion and enormous burdens for the bankruptcy court system and its participants, the real estate market, and local taxing agencies.

A very large percentage of bankruptcy cases filed, be they under Chapter 7, 11, 12 or 13, involve debtors with an ownership interest in real property. The automatic stay as to such property becomes effective immediately upon filing and continues, to the extent the property is property of the estate, until the property is no longer property of the estate [for example, by exemption, abandonment, sale or some other form of divestiture] [§ 362(c)(1)], or until the case is closed [§ 554(c)]. Case closing in a given matter can take several years.

Even when property is no longer property of the *estate*, it can revert—as by exemption or abandonment—to the status of property of the debtor, and the automatic stay remains in effect as to such property until the case is closed, dismissed, or a discharge is granted or denied [§ 362(c)(2)]. Litigation over the right to a discharge could thus extend the life of the automatic stay for a substantial period of time even though the property is no longer property of the bankruptcy estate and no longer involved in the administration of the estate.

It is conceivable that as to every single bankruptcy filed in the United States, every taxing agency authorized to secure the tax it imposes by a lien against real property will have to review every bankruptcy petition filed to see if real property within its jurisdiction is listed in the property schedules, and if so, determine if a motion for relief from the automatic stay must be obtained or some other proceeding initiated in the bankruptcy court so that the property can be subjected to its property tax obligation. In California the tax assessors in each of this state's 58 counties will have to review, at a minimum, bankruptcy petitions filed in every California bankruptcy court to avoid a violation of the automatic stay by some act committed in the assessment or collection process.

In Chapter 11 cases the automatic stay can remain in effect until a plan is confirmed, an event which could take years to occur.

In Chapter 12 and 13 cases the debtor's discharge—the event which terminates the automatic stay under such chapters—does not occur until the plan, usually of from three to five years duration, is completed. In the absence of relief from the automatic stay the taxing agency would be barred from all tax income for 'that long a period. To avoid such a result, relief from the automatic stay would have to be obtained in every single case involving real property; and given the fact that Chapter 13 is such a common and widely-used remedy for persons who have fallen into default on their mortgage payments, the litigation in this area alone would be voluminous. This volume of litigation will impose great financial burdens on already strapped local governments, bury bankruptcy clerks and judges in even more cases and add to the cost of a bankruptcy filing for every single debtor who owns real property.

Thus in Chapter 11, 12 and 13 proceedings, the taxing agency can face the prospect of many years loss of tax revenue on the real property held by the estate or the debtor.

Even in Chapter 7 cases which are generally resolved in a relatively short period of time, there is a usual minimum of at least six months when the automatic stay is in effect, during which the taxing agency would be barred from taking any of the steps in its assessment and collection procedures.

The devastating impact which can be suffered by a local government entities during the extended period of time that the automatic stay can remain in effect is borne out by the result in *Parr Meadows, supra,* where the court's ruling benefitted only mortgage holders who were able to avoid

four years of property tax liability while the bankruptcy case was pending with a loss to the county of more than $1.5 million in tax revenue.

While it may be the practice of a given bankruptcy clerk to notify the county tax collector of a bankruptcy proceeding filed by a resident of a given county, there is no way to insure that notice of the bankruptcy will be furnished to tax collectors of other counties where the debtor may own property. Also, the debtor's name may not even appear on the tax records if there are co-owners or if the debtor's ownership interest arises by virtue of an unrecorded deed or contract of sale, or as is regrettably too often the case, the debtor has acquired the real property on the eve of bankruptcy.

As a final observation as to the pernicious effect of a rule which denies lien status to ongoing real property taxes, the ability to conduct a sale of any real property involved or previously involved in a bankruptcy proceeding, even if only remotely so, can be severely hampered by delays needed to inquire about, resolve or litigate issues regarding the validity of an existing lien for property taxes.

Further, it is obvious that the automatic stay does not bar all post-petition charges on real property, as over-secured creditors are permitted by § 506(b) to add post-petition interest to their secured claims as well as other charges authorized by a creditor's security agreement, including post-petition attorney fees [United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)]. The concept thus exists in the Bankruptcy Code itself for reducing the bankruptcy estate's equity in real property, thereby eliminating any notion that the status quo must be preserved at all costs.

Like other secured creditors, the taxing agency here is doing no more than imposing the ongoing charges it was authorized to impose prior to the bankruptcy filing. There is no sound reason why secured creditors should be allowed to accrue added post-petition charges against estate property and thus diminish the equity available to creditors generally, while a taxing agency, which is compelled to provide ongoing public services to the subject property, cannot.

To the extent that the decisions of the courts in *Parr Meadows* and *Maryland National* can be reconciled as the *Parr* decision attempts to do [880 F.2d at 1548], it appears that the California scheme meets with the Fourth Circuit's "ever-present" and "long standing" interests tests, especially so in view of the state's constitutionally declared tax policies in Articles XIII and XIII A of the California Constitution. The latter article, which became effective in 1978, sets forth specific limits as to the amount of real property tax which can be collected for each year, and has been described by the California Supreme Court as significantly altering the system of real property taxation in the state [*Board of Supervisors of San Diego County v. Lonergan*, 27 Cal.3d 855, 857, 167 Cal.Rptr 820, 821, 616 P.2d 802, 803 (1980), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1362, 67 L.Ed.2d 344 (1981)].

Wholly apart from the approach of the Fourth Circuit in relying upon § 546(b) to find an exception under § 362(b)(3) to the automatic stay, it is legitimate to inquire if Congress truly intended to include the *in rem* imposition of real property taxes, which form the principal source of revenue for the ongoing operations of most local governmental entities, within the meaning of "lien" as used in § 362(a). The reality is, as unequivocally demonstrated by all the cases involving this issue, that taxing agencies have regularly and historically, throughout the country, asserted that post-petition annually-assessed real property taxes constitute a charge against the property and that debtors, creditors and trustees (with the obvious exception of the parties involved in the cited cases) have concurred in and assented to that practice. Debtors-in-possession regularly pay such taxes (when able) and secured creditors complain loudly (and often pay the taxes themselves) when a default in tax payments occurs. It accordingly seems most incongruous to argue that Congress and those who assisted in the drafting of § 362(a)(4) were unaware of this reality at

the time of its enactment or intended to introduce such widespread withdrawal of local government funding by adoption of the section.

## DECISION

Having expressed the above stated views primarily because they are deemed important to the developing and conflicting state of the law on this subject, a decision on the merits cannot be rendered in this matter.

▪ As stated at the outset, plaintiff's prayer is that defendant's "claims" be adjudged a violation of the automatic stay and that "they" [which is understood to refer to claims] "be adjudged to be unsecured claims of the estate." So stated, and the complaint having been filed at a time prior to confirmation of the plan, the complaint is one for determination of a claim. However, the defendant never filed a claim in this case and the plan does not appear to deal with any claim of the defendant's.

In fact, as it is established that the debtor no longer owned the subject real property at the time of confirmation and that the defendant under California law could not assert an *in personam* claim for any real property tax against the debtor (*City of Huntington Beach, supra*), the request of the plaintiff for determination that a claim against the estate should be accorded unsecured status has been rendered moot.

To the extent that the plaintiff was seeking relief beyond the prayer of the complaint, it is doubtful that such relief could be accorded under this court's core jurisdiction or even its non-core jurisdiction, as any relief which might be conceivably sought would involve only third parties to the bankruptcy proceeding, the issues raised having no effect whatsoever—even at the time the complaint was filed—on any existing property rights or obligations of the debtor or the bankruptcy estate or any matter subject to treatment under the plan of reorganization.

It is further noted that if the plaintiff was asking this court to require repayment of the taxes paid to the defendant, it is unlikely that this court could accord such relief in view of the defendant's possible right to claim sovereign immunity under *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989).

A separate judgment will issue denying relief without prejudice to the plaintiff's right to seek a determination in some other forum as to any claim the plaintiff may have for a recovery against the defendant.