FIRST NATIONAL BANK, STROMSBURG, NEBRASKA, A
CORPORTION, APPELLANT, V. LORETTA HEIDEN, COUNTY
TREASURER OF YORK COUNTY, NEBRASKA, ET AL., APPELLEES.

491 N.W.2d 699

Filed November 13, 1992.    No. S-90-029.

Lawayne L. Feit, of Mattson, Ricketts, Davies, Stewart & Calkins, for appellant.

Vincent Valentino, Deputy York County Attorney, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

In this appeal, we affirm the ruling of the district court for York County that First National Bank, Stromsburg, Nebraska (FNB), a corporation, lacked standing to sue for the refund of taxes which it paid on personal property it had purportedly acquired and subsequently sold to Farmers Cooperative Grain Association (Farmers).

To fully understand the issue under consideration, a history

of the personal property involved and its taxation is helpful.

Grain processing equipment and a grain elevator on leased land in York County, owned by Benedict Consolidated Industries, Inc. (BCI), were assessed for taxes as personal property. On September 25, 1985, a $17,774.22 distress warrant for delinquent taxes, interest, and fees for the years 1982, 1983, and 1984 was issued to the York County sheriff. The warrant remained unsatisfied, and the sheriff never sold the property for taxes pursuant to the September 25 distress warrant.

It was on June 4, 1985, that FNB obtained a judgment against BCI in the district court for Polk County in the amount of $93,839.15 plus interest. On October 8, the judgment was transcribed to the district court for York County. On December 23, at an execution sale on FNB's judgment, FNB bid $600 for BCI's interest in its York County grain elevator and grain processing equipment.

Objections to confirmation of the December 23 execution sale were filed in the district court for York County. On January 15, 1986, while the objections were still pending, the York County sheriff, apparently in the mistaken belief that the sale had been judicially confirmed, issued and delivered a sheriff's deed to FNB for the subject property. On February 20, the district court removed the proceedings from its active docket because they were automatically stayed when BCI filed a chapter 11 bankruptcy proceeding in federal court on February 19. The appellees were not listed as creditors. Neither were they given any notice of the proceedings.

On June 9, 1986, the president of BCI signed a quitclaim deed transferring all of BCI's interest in the subject personal property to FNB. At the same time, BCI assigned its leasehold interests in related real estate to FNB. Both of these transactions were purportedly pursuant to a stipulation by BCI and FNB which was filed in the bankruptcy court. The stipulation was dated June 9 and was filed in the bankruptcy court on June 12. The bankruptcy court appears to have "sustained" the stipulation on June 13. The validity of the foregoing transactions between FNB and BCI does not control the disposition of this appeal. For the reasons hereinafter set forth, it is FNB's ownership on March 31, 1987, the date it filed

for a refund of the taxes it paid on the subject personal property, that determines whether FNB had standing to seek such a refund. The record reflects that on July 23, 1986, FNB, upon receipt of $190,000, conveyed to Farmers all of its interest in the subject personal property and leasehold interests originally belonging to BCI and, thereafter, had no ownership interest in the property. In the documents FNB gave to Farmers, FNB agreed that it would hold Farmers harmless of the payment of any taxes that had accrued.

On September 23, 1986, a distress warrant was again issued against the subject property, this time for personal property tax in the amount of $25,522.94. This distress warrant represented taxes, interest, and fees for the tax years 1982 through and including 1985. Because of the sale of the subject property to Farmers, taxes for 1986 were accelerated, and on October 30, 1986, another distress warrant was issued, this time in the amount of $30,235.32.

On March 10, 1987, more than 7 months after it had divested itself of any ownership interest it had in the subject property, FNB paid the amount of the October 30 distress warrant in accordance with the clause in its contract to hold Farmers harmless. On March 31, pursuant to Neb. Rev. Stat. § 77-1735 (Reissue 1986), FNB filed a claim with the York County Board of County Commissioners for a tax refund of the money it had paid to satisfy the October 30 distress warrant. In support of its claim, FNB argued that when it satisfied the October distress warrant, there were no valid tax liens against the subject property. FNB's claim was denied, and it filed suit for refund with the district court for York County.

Following a trial, the district court held that FNB was not a real party in interest, that it had voluntarily paid the taxes on behalf of another, and that FNB had no standing to bring a lawsuit under § 77-1735. The district court dismissed FNB's case with prejudice. FNB timely appealed to this court.

## SCOPE OF REVIEW

Whether a person who has no ownership interest in personal property, but pays the taxes of another pursuant to a contractual agreement, has standing to sue for recovery of

those taxes under § 77-1735 may be determined by statutory construction. Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the trial court. See, *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990); *Sorensen v. City of Omaha*, 230 Neb. 286, 430 N.W.2d 696 (1988).

## ISSUE OF STANDING

FNB argues (1) that its contractual agreement with Farmers rendered payment of the tax involved involuntary and (2) that in any event, § 77-1735, under which FNB seeks a tax refund, does not require that the person seeking the refund be the owner of the property on which the tax was assessed.

The appellees, consisting of governmental subdivisions for whose benefit the taxes were imposed and the treasurer of York County, contend that (1) the hold harmless agreement between FNB and Farmers does not constitute an assignment of Farmers' rights to FNB, (2) FNB is not a real party in interest, (3) FNB paid the taxes on the subject personal property voluntarily, and (4) the threat of a civil action by Farmers for breach of the hold harmless contract does not support a claim of involuntary payment.

In finding that FNB lacks standing to sue for the return of taxes paid on behalf of Farmers, the district court reasoned that when FNB paid the taxes on the subject property, "it was not the owner of the property nor did it have any proprietary interest in the property. It was under no legal compulsion to pay the taxes." For the reasons hereinafter set forth, we agree with the district court's ultimate conclusion that FNB had no standing to seek a refund of taxes under § 77-1735.

To dispose of this appeal, we need consider only FNB's argument that it does not need to be the owner of the property on which the taxes were paid in order to seek a refund of taxes under § 77-1735. That statute at the time FNB filed its lawsuit stated in relevant part:

> *If a person* who claims a tax or any part thereof to be invalid for any reason other than the valuation of the property shall have paid the same to the treasurer or other

proper authority in all respects as though the same was legal and valid, he or she may, at any time within thirty days after such payment, demand the same in writing from the county treasurer to whom paid. If the same shall not be refunded within ninety days thereafter, he or she may sue such county treasurer for the amount so demanded.

(Emphasis supplied.)

FNB contends that the word "person," as used in § 77-1735, applies to any individual who has paid a tax for any reason. FNB's argument disregards the fact that the Legislature has defined relevant terms for the purpose of chapter 77. See Neb. Rev. Stat. § 77-101 (Reissue 1986).

A "person" is defined as "any number of persons; and any copartnership, association, joint-stock company, *corporation*, or any other entity *that may be the owner of property*." (Emphasis supplied.) Neb. Rev. Stat. § 77-113 (Reissue 1990). This definition clearly contemplates that a "person" (which includes a corporation) as used in § 77-1735 is one with an ownership interest in the property in question.

For the purpose of this appeal, we need not, and do not, determine the ownership of the BCI property after the execution of FNB's judgment against BCI. It is sufficient to note that FNB has neither pleaded nor proved any type of ownership interest in the subject property on the date that FNB paid the taxes or on the date that FNB filed a claim for refund of those taxes. Instead, FNB has mistakenly relied on the common usage of the word "person" to assert its right to a refund.

Before a taxpayer can recover taxes under a statutory procedure, the taxpayer must substantially comply with the requirements of the statute. See, *Svoboda v. Hahn*, 196 Neb. 21, 241 N.W.2d 499 (1976); *Monteith v. Alpha High School District*, 125 Neb. 665, 251 N.W. 661 (1933). FNB is not a "person" with an ownership interest in the subject property within the meaning of §§ 77-113 and 77-1735 and, therefore, fails to meet the most fundamental requirement of § 77-1735.

The district court correctly found that FNB has no standing to sue for a refund under § 77-1735 because of FNB's lack of an

ownership interest in the subject property. The order of the district court dismissing the suit is affirmed.

AFFIRMED.

CAPORALE, J., not participating.