ALLIANCE RAILROAD COMMUNITY CREDIT UNION, FORMERLY
ALLIANCE RAILROAD EMPLOYEES CREDIT UNION, APPELLANT, V.
COUNTY OF BOX BUTTE, NEBRASKA, APPELLEE.

503 N.W.2d 191

Filed July 23, 1993.   No. S-91-252.

Terry Curtiss, of Curtiss, Moravek & Curtiss, P.C., for appellant.

M. Roger Schneekloth, Box Butte County Attorney, and Laurice M. Margheim for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

HASTINGS, C.J.

The Alliance Railroad Community Credit Union (Credit Union) appeals the district court's dismissal of its petition which sought the refund of certain real estate taxes paid to the County of Box Butte, Nebraska (County). The requested relief was based on either Neb. Rev. Stat. § 77-1734.01 (Reissue 1990) or Neb. Rev. Stat. § 77-1735 (Reissue 1990). The Credit Union claims that the County is prohibited from assessing or levying general property taxes during any time after the owner of the property has filed a petition in bankruptcy during the effectiveness of the automatic stay provisions of the Bankruptcy Code and that any taxes assessed and levied in contravention of this stay are invalid and void.

It was stipulated and agreed by the parties in the district court that the matter be submitted to the court upon the pleadings, stipulations, and exhibits marked and received in evidence at the pretrial conference held on December 24, 1990. The only evidence in addition to the pleadings consisted of two exhibits showing the levy and payment of taxes for the years 1987 and 1988.

The underlying facts of this case are found for the most part in the allegations of the petition and the admissions in the County's answer. The Credit Union filed its petition in the district court for Box Butte County on April 13, 1990.

The Credit Union had loaned funds to James Gary Ward and Sandra S. Ward, on a date not appearing in the record, secured by a mortgage on the following-described real estate: "Lot 4, Block 10, Lakefield Addition to the City of Alliance, Box Butte County, Nebraska, according to the recorded plat thereof."

On July 21, 1987, the Wards had filed a petition for relief under chapter 13 of the U.S. Bankruptcy Code. The petition filed in this case alleged that as a result of the filing of the petition in bankruptcy, a stay of certain acts and proceedings against the debtors became effective as of the date of filing pursuant to 11 U.S.C. § 362(a) (1988) of the Bankruptcy Code. The Credit Union alleges that such a stay applies to the assessment, levy, and collection of taxes, and imposition of liens therefor, by governmental subdivisions. That allegation is specifically denied by the County. This forms the basic issue in

this appeal.

The facts alleged by the Credit Union and admitted by the County in its answer are that the County levied upon the Ward property certain real estate taxes for 1987 and 1988 as part of the regular tax collection activities of the County; that the Wards conveyed the real estate to the Credit Union on January 19, 1988, and on September 15, the U.S. Bankruptcy Court entered an order confirming the Wards' amended plan; that no notice of assessment, change, or any other action was sent to the Credit Union or to the Wards except the notice in December 1987 for the 1988 assessment generated by the county assessor for Box Butte County; and no relief from the stay was requested or granted to the County to allow actions to assess, levy, or perfect liens for payment of the 1987 and 1988 taxes on the Ward property.

The Credit Union further alleges, and it is admitted by the County, that it paid the 1987 and 1988 real estate taxes assessed on the Ward property, together with interest in the amount of $3,471.50, then made a claim for a refund to the county treasurer by means of letters dated December 20, 1989, and January 11, 1990. The county commissioners of Box Butte County denied the Credit Union's claim at their meeting held February 6, 1990.

The Credit Union also claims that 11 U.S.C. § 362(a) of the Bankruptcy Code applies to the assessment, levy, and collection of taxes, and imposition of liens therefor, by governmental subdivisions, and therefore, because the taxes levied and assessed in the face of a bankruptcy stay were illegal and void, it was entitled to a refund of taxes, interest, and advertising paid on the Ward property for 1987 and 1988, under the premise that the tax either had been imposed by mistake, as provided by § 77-1734.01, or was altogether void and invalid, as provided by § 77-1735. These allegations were denied by the County. The Credit Union accordingly prayed for judgment against the County in the amount of $3,471.50, plus interest from December 20, 1989, and costs of the action.

On February 19, 1991, the court dismissed the Credit Union's petition at its own cost, finding that

11 USC Section 362 operates as an injunction prohibiting

the creation of a lien under Section 77-203 R.R.S., 1943 while bankruptcy proceedings are pending, but it does not stay proceedings for the assessment and levy of real estate taxes; that the stay no longer applies after the property is conveyed to the Plaintiff by the bankrupt; and that the liens created by statute became effective when the stay was lifted.

The Credit Union claims that the district court erred (1) in holding that the stay of Bankruptcy Code 11 U.S.C. § 362(a) did not apply to the levy and assessment of real estate taxes by the County, (2) in finding that the stay prohibited only the creation of a lien pursuant to Neb. Rev. Stat. § 77-203 (Reissue 1990), and (3) in finding that the 1987 real estate taxes levied on the Ward real estate and the 1988 real estate taxes assessed during the pendency of the Ward bankruptcy were effective and became liens when the stay was lifted by conveyances to the Credit Union. The substance of the three claimed errors is that the trial court erred in refusing to recognize that 11 U.S.C. § 362(a) automatically stayed and therefore rendered void and invalid the assessment of taxes during those 2 years.

Whether a mortgagee who purchases property of a bankrupt may successfully challenge taxes levied or assessed during the bankruptcy is to be determined by statutory construction. Statutory construction is a matter of law in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the trial court. *First Nat. Bank v. Heiden*, 241 Neb. 893, 491 N.W.2d 699 (1992). See, also, *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990); *Sorenson v. City of Omaha*, 230 Neb. 286, 430 N.W.2d 696 (1988).

The procedure for the levy and collection of taxes in Nebraska may be found in the statutes. On or before January 1 of each year, the county assessor or county clerk shall make up a list, ledger, or computer file of the taxable lands and lots in the county. Neb. Rev. Stat. § 77-1303 (Reissue 1990). The county assessor or county clerk shall complete his or her revision of the assessment rolls and file with the county clerk on or before April 1 of each year a certificate indicating that such revision is complete. The county clerk shall cause to be published in a

paper of general circulation in the county a notice of the filing of the assessment roll. Neb. Rev. Stat. § 77-1315 (Reissue 1990). The county board of equalization shall fairly and impartially equalize the valuation of individual parcels of real estate so that all property is assessed uniformly and proportionately. Neb. Rev. Stat. § 77-1504 (Reissue 1990). The county board of equalization shall each year, on or before September 15, levy the necessary taxes for the current year. Neb. Rev. Stat. § 77-1601 (Reissue 1990). All tangible property not expressly exempt therefrom shall be subject to taxation and shall be valued at its actual value. Neb. Rev. Stat. § 77-201 (Reissue 1990). All general real property taxes levied for any county shall be due and payable on December 31 next following the date of levy, and commencing on that date shall be a first lien on the real estate taxed until paid or extinguished as provided by law. § 77-203.

This court has held that the lien for taxes attaches automatically without any affirmative act by taxing officials after levies are complete. Taxes upon land, *whenever* levied, take precedence over all other liens. *Eddy v. Kimerer*, 61 Neb. 498, 85 N.W. 540 (1901).

An automatic stay applicable to "(4) any act to create, perfect, or enforce any lien against property of the estate" is provided for in 11 U.S.C. § 362(a).

The purpose of the automatic stay is to protect the assets of the debtor from its creditors. *Rogers v. Rogers*, 671 P.2d 160 (Utah 1983); *In re Flagg*, 17 B.R. 677 (Bankr. E.D. Pa. 1982) (quoting legislative history to 11 U.S.C. § 362).

In *Barnett v. Lewis*, 170 Cal. App. 3d 1079, 1088, 217 Cal. Rptr. 80, 85 (1985), a California court offered the following observations on the purpose of 11 U.S.C. § 362(a):

> "It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." (*Foulke v. Lavelle* (1982) 308 Pa. Super. 131, 454 A.2d 56, 59.)

Another purpose of the automatic stay of proceedings

against a debtor who has filed a petition pursuant to the Bankruptcy Code is to prevent dissipation of the bankrupt's assets and to avoid the multiplicity of claims in different forums against the estate. *GMAC v. Yates Motor Co.*, 159 Ga. App. 215, 283 S.E.2d 74 (1981).

The Credit Union claims that this case is controlled by *Matter of Ballentine Bros., Inc.*, 86 B.R. 198 (Bankr. D. Neb. 1988). In that case, Equitable Life Assurance Society of the United States, Farmers Home Administration, and Adams Bank & Trust Company recorded mortgages against the property of the debtor, Ballentine Bros., Inc. Thereafter, on February 2, 1983, debtor filed its petition for chapter 11 relief. In September of each subsequent year, Keith County, Nebraska, commissioners assessed and levied taxes on this property. At no time during this period did Keith County seek relief from the automatic stay or file a claim in the bankruptcy proceedings.

In August 1985, Firmin Q. Feltz purchased from Keith County four county treasurer's certificates of tax sale without actual knowledge of the bankruptcy filing. In purchasing the tax sale certificates, Feltz paid the taxes owing on the property for 1981, 1982, 1983, and the first half of 1984. As holder of the tax certificates and to protect his interest in the real estate, Feltz continued to pay the real estate taxes through 1985. In July 1986, Feltz sought relief from the stay so that he could foreclose on his tax sale certificates. The bankruptcy court denied relief.

Equitable filed a proceeding in that court to establish the priority of the various claimants asserting liens. Equitable and Adams contended that the automatic stay provided by 11 U.S.C. § 362(a)(4) prevented Keith County from perfecting a tax lien postpetition. Feltz contended that Nebraska law provided that the perfection of a real estate tax lien is a function of time and thus no "act" occurs and, further, that Nebraska law provided that regardless of the perfection date of a real estate tax lien, it takes first priority over all other liens.

The bankruptcy court agreed that all prepetition tax liens held a first priority. However, it held adversely to Feltz as to assessments made and liens created postpetition. It cited to *In re New England Carpet Co., Inc.*, 26 B.R. 934 (Bankr. D. Vt.

1983), in which a creditor asserted, postpetition, a tax lien, claiming priority over other security holders.

The relevant Vermont statute, similar to Nebraska's, authorized the tax lien to relate back in time so as to have "priority in law over any other lien having priority in time." *Id.* at 939. The court found that the "creditor's underlying interest must be created *prior* to the petition, and that the interest need only be perfected after the petition date, so as to be excepted from the automatic stay." *Id.* (emphasis added). *See also In Re Carlisle Court, Inc.*, 36 B.R. 209 (Bankr.D.C.1983) (holding that "post-petition real estate taxes assessed after commencement of the case . . . are not entitled to lien status based on the broad application of the automatic stay under 11 U.S.C. § 362(a)(4)"). *Id.* at 219.

*Matter of Ballentine Bros., Inc.*, 86 B.R. at 201.

The *Matter of Ballentine Bros., Inc.* court went on to say:

Therefore, Keith County's post-petition assessment and levy of real estate taxes on debtor's property are stayed unless the County succeeds in its second argument that tax collecting duties are essential to the public welfare and safety and that these duties are exempt from the stay pursuant to Section 362(b)(4), p. 2-3, *supra*. [That section provides, in substance, that the filing of a petition does not operate as a stay under certain conditions "of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power."]

Section 362(b)(4) is "intended to be given a narrow construction . . . and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.". [Citations omitted.] From this legislative passage has been generated what courts call the "pecuniary purpose" test. [Citation omitted.] "State and local governmental units cannot, by an exercise of their police or regulatory powers, subvert the relief afforded by the federal bankruptcy laws. When they seek to do so for a pecuniary purpose, they are automatically stayed, notwithstanding

the exception found at 11 U.S.C. § 362(b)(4)." [Citation omitted.]

. . . Keith County's assessment and levying of real estate taxes are purely pecuniary acts and intended to enable it to obtain funds. Although the funds will be used for various public purposes, the initial and primary purpose of assessment and levy is the collection of money, in this case, from debtor's estate. If the County were successful in claiming the Section 362(b)(4) exception, the County gains an economic advantage over the claimants "in relation to the debtor's estate." *Id.*

. . . .

. . . The County's claim will not be eliminated, but rather it will be assigned a priority in relation to the other claims.

. . . .

Moreover, attributing a narrow interpretation to Section 362(b)(4) is reasonable in context with other sections of the Bankruptcy Code addressing tax claims. For example, Section 503 designates "any tax incurred by the estate," after the commencement of the case, as an administrative expense. Administrative expenses receive first priority in payment after prepetition secured claims. 11 U.S.C. § 507(a)(1) (1987). The Code's inclusion of "taxes" as an administrative expense in Section 503 and the specific reference to "property taxes" assessed prior to the commencement of the case in Section 507(a)(7)(B) would be superfluous if the County could acquire a tax lien post petition despite the automatic stay.

. . . .

In conclusion, the 1981 and 1982 tax liens are properly perfected, and Nebraska law affords them first priority over all other claimants. Section 362(a) stays the 1983 through 1987 assessments, levies and liens as well as the 1988 assessment.

86 B.R. at 202-03.

The Credit Union claims the taxes assessed and levied by the County either are void and invalid or were collected by reason of mistake. *Matter of Ballentine Bros., Inc.* supports neither

conclusion. *Matter of Ballentine Bros., Inc.* said that "assessments, levies and liens" for taxes made and created during the bankruptcy proceedings were stayed and unenforceable during that period of time. 86 B.R. at 203. It held that "the County's claim will not be eliminated, but rather it will be assigned a priority in relation to the other claims." *Id.* at 202.

*In re D. Papagni Fruit Co.*, 132 B.R. 42 (Bankr. E.D. Cal. 1991), is mildly critical of *Matter of Ballentine Bros., Inc.* In that case, an adversary proceeding in which the holder of a deed of trust executed prepetition disputed the validity of a lien of the County of Fresno as to taxes assessed and levied postpetition, and also sought to recover taxes withheld and paid in satisfaction of those liens upon sale postfiling of the property by plaintiff to a third party, relief was denied. The court said:

> Collection of *in rem* taxes can only be forced by actual sale of the property impressed with the lien. Thus the tax is not properly recoverable as an administrative claim. If it were made recoverable by some act of the bankruptcy court, such action would improperly transform *in rem* liability into personal liability, a result which apparently did not bother some courts [See, e.g., *Matter of Ballentine Bros., Inc.*, 86 B.R. 198 (Bkrtcy.D.Neb.1988) . . . .]

132 B.R. at 44.

Under Nebraska law

> a tax, general or special, on real estate creates no personal liability or for the payment of which a judgment *in personam* could be obtained. The real property thus assessed is the only property that can be resorted to and taken in satisfaction of the taxes levied against the same.

*City of Beatrice v. Wright*, 72 Neb. 689, 696, 101 N.W. 1039, 1042 (1904). This is in accord with the general rule. See *Merv E. Hilpipre Auction Co. v. Solon St. Bank*, 343 N.W.2d 452 (Iowa 1984).

*In re D. Papagni Fruit Co.* goes on to say:

> The devastating impact which can be suffered by a local government entities [sic] during the extended period of time that the automatic stay can remain in effect is borne out by the result in *Parr Meadows, supra,* where the

court's ruling benefitted only mortgage holders who were able to avoid four years of property tax liability while the bankruptcy case was pending with a loss to the county of more than $1.5 million in tax revenue.

. . . .

Further, it is obvious that the automatic stay does not bar all post-petition charges on real property, as over-secured creditors are permitted by § 506(b) to add post-petition interest to their secured claims as well as other charges authorized by a creditor's security agreement, including post-petition attorney fees [citation omitted]. . . .

Like other secured creditors, the taxing agency here is doing no more than imposing the ongoing charges it was authorized to impose prior to the bankruptcy filing. There is no sound reason why secured creditors should be allowed to accrue added post-petition charges against estate property and thus diminish the equity available to creditors generally, while a taxing agency, which is compelled to provide ongoing public services to the subject property, cannot.

. . . .

Wholly apart from the approach of the Fourth Circuit in relying upon § 546(b) to find an exception under § 362(b)(3) to the automatic stay, it is legitimate to inquire if Congress truly intended to include the *in rem* imposition of real property taxes, which form the principal source of revenue for the ongoing operations of most local governmental entities, within the meaning of "lien" as used in § 362(a). The reality is, as unequivocally demonstrated by all the cases involving this issue, that taxing agencies have regularly and historically, throughout the country, asserted that post-petition annually-assessed real property taxes constitute a charge against the property and that debtors, creditors and trustees (with the obvious exception of the parties involved in the cited cases) have concurred in and assented to that practice. Debtors-in-possession regularly pay such taxes (when able) and secured creditors complain loudly (and often

pay the taxes themselves) when a default in tax payments occurs. It accordingly seems most incongruous to argue that Congress and those who assisted in the drafting of § 362(a)(4) were unaware of this reality at the time of its enactment or intended to introduce such widespread withdrawal of local government funding by adoption of the section.

132 B.R. at 45-47.

The case *In re Bellman Farms, Inc.*, 86 B.R. 1016 (Bankr. D.S.D. 1988), is somewhat helpful in resolving the issue in the case at bar because of the similarity of the taxing statutes of Nebraska and South Dakota. In *In re Bellman Farms, Inc.*, a chapter 11 bankruptcy petition was filed on December 1, 1981, and was dismissed on February 29, 1984. The debtor filed a second chapter 11 petition on March 13, which was converted to a chapter 12 bankruptcy and which was ongoing. The dispute in the chapter 12 proceedings involved a disagreement between the debtor and the Federal Land Bank of Omaha (FLB-O), which had a secured claim on the real estate of the debtor, as to the plan proposed by the debtor, which would reduce the amount owed by the debtor to FLB-O to the extent of the real estate taxes for the years 1981 through 1987. FLB-O objected to that treatment of its secured claim, insisting that all taxes accrued postpetition, either the one filed in 1981 or the present proceedings originally filed in 1984, and should be treated as an administrative claim.

FLB-O claimed that all taxes were assessed and levied during times when an automatic stay was in effect. Although determining that "the amount of taxes *due and owing* for 1984, 1985, 1986, and 1987 [years during the presently existing proceedings] is not deducted from the fair market value of the real property" (emphasis supplied) because "[t]he county does not have a secured claim for this amount because of the automatic stay," 86 B.R. at 1021, the bankruptcy court disagreed as to the taxes for 1981, 1982, and 1983, holding that the amount of those taxes would reduce the secured claim of FLB-O to that extent. The court stated:

> On February 29, 1984, the first Bellman Farms, Inc., Chapter 11 case was dismissed. The automatic stay of

Section 362 was instantly lifted upon dismissal of the case. [Citations omitted.] At the time the case was dismissed, nothing prevented the lien of S.D.C.L. §.10-19-1 from attaching to the Bellman Farms, Inc., real property, and no affirmative acts were needed to perfect this lien against the FLB-O. The lien arises and is perfected by operation of law, but for the automatic stay, and, thus, Faulk County immediately, upon dismissal of the bankruptcy case, had a prior, perfected lien on the real property in question for unpaid real estate taxes from 1981, 1982, and 1983.

86 B.R. at 1020.

The language of *In re Bellman Farms, Inc.* supports the rule that a stay of proceedings which is afforded by the laws of bankruptcy does not act as a ban, but merely as a suspension. A discharge in bankruptcy is personal to the bankrupt and has no effect upon a valid lien existing on his or her property. *Omaha U. S. Employees' Federal Credit Union v. Brunson*, 147 Neb. 439, 23 N.W.2d 717 (1946). Furthermore, the automatic stay does not stay acts against property which is neither the debtor's nor the estate's. *Striegel v. Dakota Hills, Inc.*, 365 N.W.2d 491 (N.D. 1985); *In re Sparkman*, 9 B.R. 359 (Bankr. E.D. Pa. 1981); 11 U.S.C. § 362(a).

Despite the broad prohibitions enumerated in 11 U.S.C. § 362(a), a bankruptcy filing under chapter 11 "does not operate as a stay . . . of the issuance to the debtor by a governmental unit of a notice of tax deficiency." 11 U.S.C. § 362(b)(9) (formerly (b)(8)); *H & H Beverage Distrib. v. Dept. of Revenue of Pa.*, 850 F.2d 165 (3d Cir. 1988). Therefore, although a governmental unit may not collect taxes or create a lien during the period of the stay, it may notify the debtor of a tax deficiency. *Id.* See, *Stackpoole v Treasury Dep't*, 194 Mich. App. 112, 486 N.W.2d 322 (1992); *O'Neill v. Washington Tp.*, 188 N.J. Super. 565, 457 A.2d 1255 (1983).

The federal bankruptcy courts have rendered decisions, a bar to versus a suspension of liens, components of which we find analogous to this situation.

In *In re Martin*, 106 B.R. 334 (Bankr. D. Me. 1989), the municipality (the city of Portland, Maine) had not taken the necessary steps to ensure the continuing perfection and

enforcement of its real estate tax liens. The court, however, delivered its holding with the following preface:

> At the outset, the court finds that postpetition tax assessment by a municipality does not violate the automatic stay, provided for in § 362(a) of the Bankruptcy Code. *See Md. Nat. Bank v. Mayor & City Council of Baltimore*, 723 F.2d 1138 (4th Cir.1983).
>
> Tax liability of the bankruptcy estate is predicated on the necessity of protection by the state or municipality. *See Swarts v. Hammer*, 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060 (1904). Because the property still receives municipal services such as protection from vandalism and maintenance of streets and roads during the administration of the estate, assessment of real estate taxes is not stayed under section 362 of the Bankruptcy Code. *See In re Klefstad*, 95 B.R. 622, 625 n.5 (Bankr.W.D.Wis.1988). To find otherwise would place too heavy a burden on each municipality, while permitting the debtor to enjoy the benefits of municipal services tax-free.

106 B.R. at 336.

The Credit Union alleged the invalidity of the levy and assessment for and the corresponding absence of a lien for taxes for the particular years. There are cases seemingly supporting its position. See, *Southern County Mut. Ins. Co. v. Powell*, 736 S.W.2d 745 (Tex. App. 1987); *United Northwest Fed'l Credit Union v. Arens*, 233 Kan. 514, 664 P.2d 811 (1983); *Brown v. National City Bank*, 8 Ohio Misc. 2d 40, 457 N.E.2d 957 (1983); *Matter of Thacker*, 24 B.R. 835 (Bankr. S.D. Ohio 1982); *In re McWhorter*, 37 B.R. 742 (Bankr. D.S.C. 1984); *Matter of Guterl Special Steel Corp.*, 111 B.R. 107 (Bankr. W.D. Pa. 1990). The Credit Union states that *Matter of Guterl Special Steel Corp.*, like *Matter of Ballentine Bros., Inc.*, held tax assessments were in violation of the bankruptcy stay and were "null and void." This simply was not the holding of *Matter of Ballentine Bros., Inc.* In any event, we reject the logic of those cases and adhere to the teachings of the earlier cases cited in this opinion.

Proof of the allegation that the assessment and levy of the

taxes in question were null and void is essential to the Credit Union's recovery. The party asserting the affirmative of an issue has the burden of proving that issue by a preponderance of the evidence. *Miller v. Westwood*, 238 Neb. 896, 472 N.W.2d 903 (1991). The Credit Union has failed to meet its burden.

Once the Credit Union purchased the Lakefield Addition property from the Wards, that property was removed from the Ward bankruptcy estate, with the statutorily created liens becoming effective and perfected with that removal.

The Bankruptcy Code clearly provides in 11 U.S.C. § 362(c) that the stay continues until such property is no longer property of the estate, through such activities as sale, abandonment, or exemption, or if the bankruptcy case is closed or dismissed.

To permit mortgagees to purchase property on which they hold a lien from bankrupt mortgagors, thereby salvaging their interest, without subjecting them to the real estate tax liens would grant mortgagees a windfall that the federal Bankruptcy Code neither intended nor permits. Any other interpretation of the statute would create absurd results which we choose not to adopt.

The Credit Union's assignments of error are without merit, and the judgment of the district court is affirmed.

AFFIRMED.